SCANNER

## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

**IRENE YATES**

Plaintiff

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

And

**NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING**

Defendants

Civil Case:  CAL21-06962

FR GEO CO MD #18    2021 OCT -5  AM 11: 21    Clerk of the Circuit Court

---

### AMENDED CLASS ACTION COMPLAINT[1]
### &
### REQUEST FOR JURY TRIAL

Plaintiff Irene Yates ("Yates" or "Plaintiff" or "Named Plaintiff"), on her individual behalf,

and on behalf of others similarly situated and by her attorneys, Scott Borison and the Borison Firm

LLC, Phillip Robinson and the Consumer Law Center LLC, and Thomas Minton and Goldman &

Minton, P.C., sues Federal National Mortgage Association ("Fannie Mae") and NewRez LLC

(f/k/a New Penn Financial, LLC) d/b/a Shellpoint Mortgage Servicing ("Shellpoint")(collectively

"Defendants"), demands a trial by Jury on all counts for which a right to trial by jury is allowed

and, in support of her Amended Class Action Complaint, states:

---

[1]    Attached hereto as Exhibit 1 is a comparison copy of the Amendments made herein.

## INTRODUCTION

1.      The Defendants have generated substantial revenue by illegally harvesting inspection and convenience fees from Maryland consumers. The fees they have charged and collected are prohibited by Maryland law, Maryland regulations or the contracts governing the relations between Plaintiff and Fannie Mae which incorporates Maryland law, regulations, and judicial decisions.   Maryland law and regulatory guidance expressly prohibits the Defendants' churning of property inspection and convenience fees subject to this Complaint related to Yates' mortgage loan. Fannie Mae and Shellpoint wish to continue their illegal fee harvesting programs unchecked, and while doing so unfairly, improperly, and deceptively increasing the cost of Yates' mortgage loan.

2.      Shellpoint and Fannie Mae place their interest above the remedial rights of homeowners and consumers and engage in a pattern of unsafe and unsound mortgage service practices. Shellpoint and Fannie Mae unfairly and deceptively ignore their statutory or contractual duties including those Shellpoint agreed to, to obtain a license to legally operate in the State of Maryland. Further, not only is Yates harmed by Defendants' conduct, but so also are honest businesses who follow the law and the honest businesses are placed at a competitive disadvantage by the Defendants' flagrant violations described *infra*.

Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 3 of 72

3.      As part of the fee harvesting programs, the Defendants have imposed and collected property inspection fees from the Plaintiff and the putative class members without the right to do so. Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property."  COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to

closing costs as to override the plain language of the statute"); *Nationstar Mortg. LLC v. Kemp*, No. 43, SEPT. TERM, 2020, 2021 WL 3828679, at *21 (Md. Aug. 27, 2021)("*Kemp II*")("The prohibition on charging inspection fees in CL § 12-121 applies to an assignee of a mortgage loan, such as Fannie Mae, and a servicer, such as Nationstar"). The Defendants' charges for the inspection fees are a profit center imposed and collected by Shellpoint and Fannie Mae. The fees charged are not simply pass-through costs to Yates. Rather, they represent materially excessive sums over the actual costs associated with the inspection costs and are done repeatedly to generate the Defendants' proftis from the fees.

4.      The Defendants' fee harvesting programs also include charging and collecting convenience fees from consumers, including the Plaintiff, without the right to do so. The convenience fees are charged for accepting payments by telephone and/or by the Internet. These so-called convenience fees are not authorized by the documents governing the Plaintiff's loan and Maryland law.  In addition:

a.      They are not in writing and prohibited by the statute of frauds that applies since the consumer debts subject to this action involve mortgage loans and related real property in the State of Maryland.

b.      The so-called convenience fees are a profit center imposed and collected by Shellpoint and Fannie Mae, the charges for the convenience fees are not simply pass-through costs to consumers, including Yates.  Rather, they are well in excess of the actual costs to accept a fee by electronic means over the phone or over the Internet. Specifically, Shellpoint's and Fannie Mae's charge more than 10 to 50 times the above their actual costs to accept telephonic or electronic payments.

3

## JURISDICTION AND VENUE

5.      This Court has jurisdiction asserted for the claims herein because Shellpoint and Fannie Mae transact business, perform work in or provide services in Maryland and Prince George's County, Maryland.   *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994)(a person who "buys and sells [] mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business").

6.      This Court also has jurisdiction for the claims asserted because the injuries to Plaintiff caused by the Defendants' collective action occurred in Maryland.

7.      Further, Shellpoint and Fannie Mae own real property, or have an interest in real property in the State of Maryland and Prince George's County thereby subjecting itself to the jurisdiction of this Court.

8.      The Court has declaratory judgment authority pursuant to CTS & JUD. PROC. § 3-409.

9.      This Amended Class Action Complaint does hereby toll all the putative class member claims from the date of its filing until the Court makes a ruling upon Plaintiff's motion for class certification.   *Cain v. Midland Funding, LLC*, No. 38, SEPT. TERM, 2020, 2021 WL 3400552, at *24 (Md. Aug. 4, 2021)("With principles of judicial economy and efficiency in mind, we agreed with the *American Pipe* Court that, "in the absence of a class action tolling rule, putative class members will … have a sufficiently strong incentive to file protective claims to justify adoption of a class action tolling rule." *Id.* We also agreed with the *Crown, Cork & Seal* Court's conclusion that the same principles of judicial economy and efficiency compelled the application of the tolling rule to putative class members who chose to pursue later-filed individual claims in the event that class action certification is denied. *Id.*").

4

**PARTIES**

10.     Plaintiff Irene Yates ("Yates" or "Plaintiff") is a natural person who owns the real property known as 9405 Presley Place, Lanham, MD 20706-3461 ("Yates Property"). Yates is also the borrower on the mortgage loan subject to this action, related to the Yates Property" which is associated with the Yates Property and was utilized entirely for personal, consumer purposes ("Yates Loan"). The Yates Loan is a federally related mortgage.

11.     Shellpoint is a wholly-owned subsidiary of Shellpoint Partners LLC, a Delaware limited liability company. Shellpoint Partners LLC is wholly-owned by NRM Acquisition LLC and NRM Acquisition II LLC, both of which are Delaware limited liability companies. Both NRM Acquisition entities are wholly-owned by New Residential Mortgage LLC, a Delaware limited liability company. New Residential Mortgage LLC is wholly-owned by New Residential Invest-ment Corporation, a Delaware corporation. New Residential Investment Corporation is publicly traded on the New York Stock Exchange under the ticker symbol NRZ.  In addition:

a.      NRZ advertises on its website the reason why it is focused on Shellpoint's business model which acquires the mortgage servicing rights from others:  "A mortgage servicing right (MSR) provides a mortgage servicer with the right to service a pool of residential mortgage loans in exchange for a portion of the interest payments made on the underlying residential mort-gage loans. Advances are required capital outlays by the servicer to fund missed payments from delinquent borrowers and foreclosure-related expenses. The servicer has limited risk of not being reimbursed for advances, because advances are almost always 'top of the waterfall' in the event of a property sale" (https://www.newresi.com/about-us).  In other words, Shellpoint makes more by churning fees and making advances related to borrowers it believes are delinquent or in foreclosure

because there is "limited risk" that those sums will not be reimbursed to it—even if it has no right to impose the fees and charges in the first instance.

      b.    Shellpoint is a licensed Maryland lender (license number 17710) and is also a licensed Maryland collection agency (license number 04-7989).

      c.    Shellpoint is a lender as that term is defined in COM. LAW § 12-101(f). *Kemp II,* 2021 WL 3828679 (holding that § 12-101(f) applies to both assignees and their agents when the assignees violate Subtitle 1 of Title 12 of the Commercial Law Article themselves after accepting assignment of the loans governed by those provisions). In addition, as a collector and mortgage servicer acting on behalf of Fannie Mae and other owners of mortgage loans, Shellpoint is not entitled to declare that it may disregard the obligations of its investors and predecessors.

12.    Fannie Mae is the owner of the Yates Loan. Maryland law recognizes that mortgage assignees like Fannie Mae step into the shoes of the assignors. *See e.g.* REAL PROP. § 2-103; *Thompkins v. Mountaineer Investments, LLC,* 439 Md. 118, 139 (2014). Fannie Mae, as the assignee of those who originally made the loans under its specific guidelines, stands in their shoes and is therefore the maker of Yate's loan. Fannie Mae also is the maker of the Yates Loan because is proscribed the guidelines that governed the loan and approved it before Yates agreed to the loan based upon Fannie Mae's pattern and practice in similar circumstances.

13.    Fannie Mae requires that Shellpoint service its agreements with Yates in accordance with Maryland law and is responsible for the acts of its authorized servicer. Shellpoint has a duty to notify Fannie Mae of any notices of errors and Fannie Mae has access to all of Shellpoint's records related to servicing the loans of Yates and others pursuant to its policies and practices.

14.    Finally, it is widely recognized that Fannie Mae routinely acquires loans from others, including the former entity known as Chevy Chase Bank F.S.B, who extended credit on its

behalf and in accordance with its guidelines. In fact, it publishes forms, guidelines, and more for persons to use when arranging sales of loans to Fannie Mae and publishes the same on its website: https://www.fanniemae.com/singlefamily/originating-underwriting. In addition, Fannie Mae is:

    a.    A lender as that term is defined in COM. LAW § 12-101(f). *See also Kemp*, 239 A.3d at 814;

    b.    Is a maker of mortgage loans by participating in the secondary mortgage market to acquire loans from others which increases liquidity to permit more mortgage loans to be arranged; and

    c.    A lender who stands in the shoes of others and is bound by the terms and conditions of the contracts it acquires and is entitled to no greater rights as an assignee than its assignors had to give it. Yates has never agreed to modify the Yates Loan documents (i.e., deed of trust and mortgage note) to not incorporate Maryland law.

### FACTUAL ALLEGATIONS

#### *General Allegations About Defendants' Knowledge & Duties*

    15.    All persons, including licensed mortgage lender/servicers in the State of Maryland like Shellpoint, are expected to know the law—including the laws governing their activities. As part of its license to conduct business in the State of Maryland, Shellpoint "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. Yates and other Maryland borrowers like Yates are intended beneficiaries of MD. CODE REGS. 09.03.06.20. All persons doing business in Maryland, including Shellpoint and Fannie Mae, are also expected to know the law.

7

SCANNER

16.     The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to the consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).  This duty of care applies to Defendants as their work involves secured, consumer mortgage loans subject to Maryland and Federal laws such as those discussed herein.

17.     Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Shellpoint is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Shellpoint is not permitted to "impos[e]... a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for Shellpoint to impose and collect sums barred by Maryland laws, regulations, and judicial precedent.

18.     Shellpoint has duties to the Plaintiff to (i) take appropriate steps to avoid foreclosure (and not churn the collection of fees and costs not permitted under the law or actually incurred to drive borrowers toward foreclosure) and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection (by regulation) to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Amongst these obligations are the servicer's duties to comply with state laws and regulations that are not expressly preempted by RESPA; in other words, Congress and the CFPB expressly intended for RESPA to work in concert with state regulation. *See e.g.*  12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

19.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, imposes a statutory duty on the Defendants to disclose and communicate to mortgage borrowers, homeowners, and its predecessor servicers with respect to the mortgage lending process in an honest and truthful manner.

20.     Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." COM. LAW § 12-121(b). *See also Taylor*, 344 Md. at 584 ("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute").

21.     The Office of the Commissioner of Financial Regulation ("OCFR") is the agency responsible for licensing and regulating Shellpoint's business activities in the State of Maryland. The OCFR expressly prohibits its licensees, including Shellpoint, from imposing and collecting property inspection fees from borrowers.

22.     OCFR, as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws. *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 449 Md. 345, 359-360 (2016). Over the course of the former and current administration, OCFR's analysis of the core issue has not wavered, and supports the position advanced by Yates in this action that charging and collecting inspection fees is unlawful under COM. LAW § 12-121 as evidenced by the following:

a.      OCFR issued an Industry Advisory on January 7, 2014 informing its licensees, including Shellpoint, that it was not permitted to impose inspection fees on mortgage borrowers.   A true and correct copy of the notice is publicly available at https://www.dllr.state.md.us/finance/advisories/advisory-nonjudicialevictions.pdf.

9

b.      On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of Shellpoint subject to this action, which improperly assessed inspection fees against the accounts of borrowers in violation of COM. LAW § 12-121, including accounts of borrowers owned by Government-Sponsored Enterprises. *See* Ocwen C&D Order at ¶¶ 79-83.  Ocwen thereafter agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance. *See* Ocwen Settlement Agreement at ¶ 26 (available at https://www.dllr.state.md.us/finance/consumers/pdf/ocwencd.pdf).

23.     On May 14, 2018, the Consumer Protection Division in the Office of the Attorney General for the State of Maryland ("CPD") agreed to an Assurance of Discontinuance with Nationstar ("Nationstar Assurance").  In the Nationstar Assurance, the CPD found that the mortgage servicer had violated the bar on the assessment of inspection fees in COM. LAW § 12-121 and such violations constituted violations of the Maryland Consumer Protection Act, COM. LAW. § 13-101, *et seq.* ("MCPA").  As the agency charged to enforce the MCPA, the CPD's position is entitled to deference for its interpretation of the MCPA. *Brown, Brown, & Brown P.C.*, 449 Md. at 359-360.

24.     Shellpoint and Fannie Mae have imposed and collected property inspection fees from other Maryland borrowers without the right to do and have disregarded all efforts challenging

10

such practices because each wish to retain the excessive profits of churning the fees onto the ac-

counts of mortgage borrowers until a court tells it to stop in a final judgment of law.  This conclu-

sion is supported in part by the following:

      a.      A publicly filed complaint to the OCFR by a Maryland consumer (i.e. com-

plaint number 1075-2019 dated 6/28/2019) which found Shellpoint improperly imposed and col-

lected a property inspection fee from a borrower and Shellpoint declined to refund the fee when

challenged.

      b.      A publicly filed Amended Complaint in the matter of *White v. NewRez LLC,*

No. CV RDB-20-1259, 2020 WL 4748539 (D. Md. Aug. 17, 2020)(now pending in the Circuit

Court for Anne Arundel County, Maryland which challenges Shellpoint's imposition of property

inspection fees onto a mortgage borrower's account without the right to do so.  Shellpoint's motion

to dismiss that complaint in the state court, in which Shellpoint asserted and relied on a claimed

right to impose the fee was denied).

      25.      Pursuant to 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41, the Defendants have a

duty of care, with respect to the residential mortgage loans of the Plaintiff to provide them periodic

statements which conspicuously and prominently identify (i) the total sum of any fees or charges

imposed by the Defendants since the prior billing statement incidental to the mortgage loan, (ii) a

breakdown of how the Defendants applied fees and charges received incidental to the mortgage

loan since the beginning calendar loan, and (iii) a transaction activity which itemizes a credit or

debt to the amount claimed due and incidental to the mortgage loan by Defendants.  Because of

the remedial purposes of 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41 to provide conspicuous

and prominent periodic statements to residential mortgage loan borrowers, the Defendants are not

permitted to add fees and charges to the periodic statements of the residential mortgage loans of

11

S
C
A
N
N
E
R

the Plaintiff which are not imposed and charged to the Plaintiff's mortgage loans. Maryland law incorporates these same requirements. COM. LAW § 12-106.

26.    Effective January 1, 2019, COM. LAW § 12-101(f) was amended by the General Assembly to also expressly include persons who are licensed, like Shellpoint, and who are required to be licensed, as Maryland mortgage lenders (whether licensed or not as a mortgage lender). *See e.g.* 2018 Maryland Laws Ch. 790 (H.B. 1297). Under the prior definition, it has been held that COM. LAW § 12-101(f) applies to persons like Shellpoint and Fannie Mae. *Kemp*, 239 A.3d 798. *See also Alexander v. Carrington Mortgage Services, LLC*, 2020 WL 7319252, at *7 (D.Md., 2020)(recognizing that a lender pursuant to COM. LAW § 12-101(f) for claims arising for violations of COM. LAW § 12-121 includes licensed servicers and mortgage assignees).

**Factual Allegations Relevant to Yates**

27.    Yates acquired the Yates Property on or about July 19, 2004.

28.    On or about April 2, 2008, Yates and her then husband (who is now deceased) refinanced the then existing loan with Chevy Chase Bank, F.S.B. which arranged the loan and made the refinance loan with the approval of Fannie Mae who intended to acquire the Yates Loan by assignment shortly after its origination whereby it would engage Chevy Chase Bank as its collector and servicer.

Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 13 of 72

29.    Under the Yates Loan's express terms and conditions, Fannie Mae, Chevy Chase Bank, and Yates agreed that the loan would be governed by Maryland law. Specifically,

a.    Fannie Mae, Chevy Chase Bank, and Yates agreed "[Chevy Chase and all of its assigns] may not charge fees that are expressly prohibited…by [controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have

the effect of law) as well as all applicable final, non-appealable judicial opinions]." *See* Deed of Trust at ¶ 14.

30.    At no point were any of the above terms changed, modified or altered.

31.    On or about June 1, 2018 Shellpoint became the collector for the Yates Loan on behalf of Fannie Mae.  As Fannie Mae's authorized agent, Shellpoint has no greater rights than Fannie Mae has for itself concerning Yates or the Yates Loan.

32.    Capital One Bank, NA  transferred the servicing rights to Shellpoint At the time of the service transfer from Capital One Bank, NA to Shellpoint, Yates was current on the Yates Loan but Shellpoint falsely and unfairly claimed she was not current.

33.    In a monthly, periodic statement to Yates from Shellpoint, on behalf of Fannie Mae dated June 22, 2018 Shellpoint represented to Yates that it had charged, imposed, and sought to collect from her a property inspection fee for the Yates Property and Yates Loan in the sum of $105.00 on June 20, 2018.  At no time before this notice did Shellpoint disclose this fee to Yates and she did not receive constructive or actual notice of the fee until or about June 25, 2018.   The $105.00 fee charged, imposed, and sought by Shellpoint was labeled as an "appraisal fee" but in fact the fee was unrelated to any lawful appraisal of the Yates Property and instead was related to a non-appraiser, visual inspection of the Yates Property.    Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 14 of 72

34.    The same June 22, 2018 monthly, periodic statement also represented to Yates that Shellpoint had charged, imposed, and sought to collect from her a property inspection fee that relates to the Yates Property or Yates Loan in the sum of $20.66 on June 20, 2018.  At no time before this notice did Shellpoint disclose this fee to Yates and she did not receive constructive or actual notice of the fee until or about June 25, 2018.  The $20.66 fee charged, imposed, and sought

13

by Shellpoint was labeled as a property inspection payment which concerned the visual inspection of the Yates Property.

35.     In a monthly, periodic statement to Yates from Shellpoint, on behalf of Fannie Mae, dated July 20, 2018 Shellpoint represented to Yates that it had charged, imposed, and sought to collect from her a property inspection fee that relates to the Yates Property or Yates Loan in the sum of $13.00 on July 16, 2018.  At no time before this notice did Shellpoint disclose this fee to Yates and she did not receive constructive or actual notice of the fee until or about July 23, 2018. The $20.66 fee charged, imposed, and sought by Shellpoint was labeled as a property inspection payment which concerned the visual inspection of the Yates Property.

36.     In a monthly, periodic statement to Yates from Shellpoint, on behalf of Fannie Mae, dated August 20, 2018 Shellpoint represented to Yates that it had charged, imposed, and sought to collect from her a convenience fee that relates to the Yates Property or Yates Loan in the sum of $5.00 on August 8, 2018.  Maryland law and the documents governing the Yates Loan do not authorize Shellpoint to impose, charge, and collect any Scheduled Payment Fee Payment.   The $5.00 fee charged, imposed, and sought by Shellpoint on behalf of Fannie Mae was unlawful.

37.     In a monthly, periodic statement to Yates from Shellpoint, on behalf of Fannie Mae, dated September 17, 2018 Shellpoint represented to Yates that it had charged, imposed, and sought to collect from her a property inspection that relates to the Yates Property or Yates Loan in the sum of $13.00 on August 21, 2018.  In the same statement, Shellpoint disclosed that it also had charged, imposed, and sought to collect from her a convenience fee that relates to the Yates Property and Yates Loan in the sum of $5.00 on August 22, 2018.

38.     In a monthly, periodic statement to Yates from Shellpoint, on behalf of Fannie Mae, dated November 17, 2018 Shellpoint represented to Yates that it had charged, imposed, and sought

14

to collect from her a convenience fee that relates to the Yates Property and Yates Loan in the sum of $10.00 on November 2, 2018.

39.    In a monthly, periodic statement to Yates from Shellpoint, on behalf of Fannie Mae, dated December 18, 2018 Shellpoint represented to Yates that it had charged, imposed, and sought to collect from her a convenience fee that relates to the Yates Property and Yates Loan in the sum of $10.00 on December 3.

40.    Yates has been damaged and sustained losses as a proximate cause of Shellpoint's and Fannie Mae's improper, unfair, and/or deceptive practices collection of fees, including the payment and collection of inspection and convenience fees not permitted as a matter of Maryland law or the terms and conditions of the Yates Loan. Yates' damages includes the unlawful fees imposed and collected by Shellpoint and Fannie Mae which have caused her payments to be diverted from lawful charges and led to the imposition and collection of other fees like late fees. Yates' damages and losses also include emotional distress damages and losses with physical manifestations including anxiety, worry, sleeping issues, and frustration that Shellpoint and Fannie Mae want to sell Yates Property.

41.    Yates is also entitled to statutory damages as discussed *infra*.

<u>**CLASS ALLEGATIONS**</u>

Case 1:21-cv-03044-RDB  Document 1-2  Filed 11/29/21  Page 16 of 72

42.    Yates brings certain claims, *infra*, on behalf of a class and subclass of similarly situated persons related to Defendants Fannie Mae and Shellpoint under MD. RULE 2-231 defined as follows:

a.    **Fannie Mae Inspection Fee Usury Class:**  Yates proposes, as the definition of the **Fannie Mae Inspection Fee Usury Class**, that it be defined as follows:

> Any person in the State of Maryland for whom (i) Fannie Mae has acted as a maker or assignee of a mortgage loan related to a secured, mortgage loan

15

at any time; (ii) where Fannie Mae or its authorized agent or servicer, except Shellpoint, charged their mortgage loan accounts with property inspection fees or convenience fees; and (iii) the mortgage loan accounts was not satisfied more than six months preceding the filing of this Amended Class Action Complaint. Excluded from the Fannie Mae Inspection Fee Usury Class are any persons who are putative class members as described in the Second Amended Complaint in the action pending in the Circuit Court for Montgomery County, Maryland (Case No. 441428-V) styled as *Kemp v. Setererus, Inc. n/k/a Nationstar Mortgage LLC and Federal National Mortgage Association.*

   b.   **Shellpoint Inspection Fee Usury Class:** Yates also proposes, as the definition of the **Shellpoint Inspection Fee Usury Class:** that it be defined as follows:

Any person in the State of Maryland for whom (i) Shellpoint has serviced a loan related to a secured, mortgage loan at any time; (ii) where Shellpoint harged their mortgage loan accounts with property inspection fees or convenience fees; and (iii) the mortgage loan accounts was not satisfied more than six months preceding the filing of this Amended Class Action Complaint. Excluded from the Shellpoint Inspection Fee Usury Class are any persons who are putative class members as described in the Amended Complaint in the action pending in the United States District Court for the District of Maryland (Case No. 8:20-cv-02581) styled as *Parker v. Goldman Sachs Mortgage Company and Shellpoint.*

   43.   Yates qualifies as a member of the proposed class and subclass in the preceding paragraph.

   44.   Excluded from each of the putative class and subclass are any person who falls Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 17 of 72 within the definitions if the person is (i) an employee or independent contractor of Shellpoint or Fannie Mae; (ii) a relative of an employee or independent contractor of the Shellpoint or Fannie Mae; or (iii) an employee of the Court where this action is pending.

   45.   The proposed class definitions may be amended or modified from time to time.

   46.   The particular members of the (i) Fannie Mae Inspection Fee Usury Class and (ii) the Shellpoint Inspection Fee Usury Class (collectively referred to as the **"Proposed Classes"**) are

capable of being ascertained without difficult managerial or administrative problems. The members of the putative classes are readily identifiable from the information and records in the possession or control of Shellpoint or Fannie Mae or its agents and from public records. Shellpoint and nearly every other mortgage servicer/collector engaged by Fannie Mae to collect from Maryland borrowers, is required to maintain this information for the entire class period. *See e.g.* Md. Code Regs. 09.03.06.04. Further, upon information and believe based on the experiences of Yates and public records discussed herein, the Defendants have a pattern and practice of representing to borrowers, including Yates and the putative class members, that they owe property inspection or convenince fees on periodic statements. The class members may be identified from these records as well.

47.    The Proposed Classes are sufficiently numerous and exceed more than fifty persons each, such that individual joinder of all members is impractical. This allegation is based on a data search of public records which identify public complaints have been filed against Shellpoint showing that it services fifty or more residential, mortgage loans in Maryland and Fannie Mae has accepted assignment of more than 50 mortgage loans of residential borrowers in the State of Maryland.

48.    There are questions of law and fact common to the Proposed Classes which predominate over any questions affecting only individual members of the Proposed classes. The wrongs alleged against Shellpoint and Fannie Mae by the Proposed Classes and the remedies sought by Yates and the putative members of the Proposed Classes against Shellpoint and Fannie Mae are identical.

49.    The common questions of law or fact for the Fannie Mae Inspection Fee Usury Class include but are not limited to:

17

a.    Whether Fannie Mae qualifies as a "collector" as that term is defined under the MCDCA and is a person subject to the MCPA;

b.    Whether Fannie Mae's conduct, directly or indirectly, violated the MCDCA and MCPA;

c.    Whether Fannie Mae is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Fannie Mae Inspection Fee Usury Class;

d.    Whether Fannie Mae's collectors/servicers, except Shellpoint, are entitled to demand property inspection fees or convenience fees on the mortgage loan accounts of the Fannie Mae Inspection Fee Usury Class on behalf of Fannie Mae;

e.    Whether this Court may declare that Fannie Mae's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the Fannie Mae Inspection Fee Usury Class members violate COM. LAW § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp II*;

f.    Whether the inspection fees charges by Fannie Mae through its collectors and servicers, except Shellpoint, on the Named Plaintiff's and Fannie Mae Inspection Fee Usury Class members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

g.    Whether Fannie Mae is liable for statutory damages pursuant to the Fannie Mae Inspection Fee Usury Class members pursuant to COM. LAW § 12-114(b)(1)(ii)  for each instance in which it directly or indirectly has imposed inspection fees onto the mortgage accounts of the Fannie Mae Inspection Fee Usury Class members.

SCANNER

h.      Whether Fannie Mae is vicariously liable for the acts of its other authorized servicers and collectors, including Shellpoint, acting on its behalf in relation to the Fannie Mae Inspection Fee Usury Class members;

i.      Whether Fannie Mae is liable for actual damages, attorneys' fees, and costs pursuant to the Fannie Mae Inspection Fee Usury Class members under the MCDCA and MCPA for the sum of inspection fees imposed and/or collected, directly or indirectly through its agents, from it related to the mortgage accounts of the Fannie Mae Inspection Fee Usury Class members.

50.    The common questions of law or fact for the Shellpoint Inspection Fee Usury Class include but are not limited to:

a.      Whether Shellpoint qualifies as a "collector" as that term is defined under the MCDCA and is a person subject to the MCPA;

b.      Whether Shellpoint's conduct, directly or indirectly, violated the MCDCA and MCPA;

c.      Whether this Court may declare that Shellpoint's practices and policies concerning the assessment of inspection fees and costs against the mortgage loan accounts of the Shellpoint Inspection Fee Usury Subclass members violate COM. LAW § 12-121(b) and *Taylor*, 344 Md. at 584;

d.      Whether the inspection fees charged by Shellpoint to the Named Plaintiffs' and Shellpoint Inspection Fee Usury Subclass members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

19

S
C
A
N
N
E
R

e.     Whether Shellpoint is liable for statutory damages pursuant to the Shell-
point Inspection Fee Usury Subclass members pursuant to COM. LAW § 12-114(b)(1)(ii)
for each instance in which it has imposed on behalf of Fannie Mae, directly or indirectly,
improper inspection fees upon the Shellpoint Inspection Fee Usury Subclass members.

f.     Whether Shellpoint is liable for actual damages, attorneys' fees, and costs
pursuant to the Shellpoint Inspection Fee Usury Class members under the MCDCA and
MCPA for the sum of inspection fees imposed and collected from it related to the mortgage
accounts of the Shellpoint Inspection Fee Usury Class members.

51.     Shellpoint's and Fannie Mae's defenses (which defenses are denied) would be typ-
ical or identical for each of the member of Proposed Classes and will be based on the same legal
and factual theories.

52.     Certification of the Proposed Classes under Md. Rule 2-231 is appropriate as to the
members of the Proposed Classes in that common questions predominate over any individual ques-
tions and a class action is superior for the fair and efficient adjudication of this controversy.

53.     A class action will cause an orderly and expeditious administration of claims by the
members of the Proposed Classes and economies of time, effort and expenses will be fostered and
uniformity of decisions will be insured.

54.     The only individual questions concern the identification of members of Proposed
Classes.  This information can be determined by a ministerial examination of public records or
from the records of Shellpoint, Fannie Mae or the records of its agents and servicers. These busi-
ness records are admissible as an exception to the hearsay rule and as a statement by a party.

55. Yates' claims are typical of the claims of the Proposed Classes pursuant to Md. Rule 2-231 since they are based on and arise out of identical facts constituting the wrongful conduct of the Shellpoint and Fannie Mae (directly and indirectly).

56. Yates will also fairly and adequately represent and protect the interests of the Proposed Classes. She is similarly situated with, and has suffered similar injuries as, the Proposed Classes she proposes to represent. She also has retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Yates does not have any interests which might cause her not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the Proposed Classes. She feels that she and members of the Proposed classes have been wronged, wish to obtain redress of the wrong, and want Shellpoint and Fannie Mae stopped from failing to comply with its mandatory duties that form the basis of the class claims.

57. The Proposed Classes members are entitled to same statutory damages sought by Yates.

### COUNT I: CLAIM PURSUANT TO COM. LAW § 12-114(b)(1)(ii)
#### (On behalf of the Plaintiff Individually and on behalf of the Fannie Mae Inspection Fee Usury Class and the Shellpoint Inspection Fee Usury Class)

58. Yates adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth. This claim is brought on behalf of Yates individually and as the Named Plaintiff on behalf of the Fannie Mae Inspection Fee Usury Class and the Shellpoint Inspection Fee Usury Class against Shellpoint and Fannie Mae respectfully.

59.    As the maker and/or servicer of the Yates Loan, and the loans of the Shellpoint Inspection Fee Usury Class members, Shellpoint qualifies as a lender pursuant to COM. LAW § 12-101(f).

60.    As the maker and/or assignee of the Yates Loan, and the loans of the Fannie Mae inspection Fee Usury Class members, Fannie Mae qualifies as a lender pursuant to COM. LAW § 12-101(f).

61.    COM. LAW § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp II* prohibits a lender (and/or its assignee) or servicer from imposing fees related to property inspections onto the Yates Loan after the origination of the subject loans. COM. LAW § 12-121 does not exempt Shellpoint or Fannie Mae from its express prohibition.

62.    The mortgage contracts governing the relationship between Yates and Fannie Mae and between the members of the Fannie Mae Inspection Fee Usury Class and Fannie Mae incorporate all Maryland laws and judicial decisions and have not been modified to disavow Maryland law in any respect. Such amendments would not be enforceable even if they existed (and they do not) since the Yates Loan and the loans of the Fannie Mae Inspection Fee Usury Class members are all associated with Maryland real property and subject to Maryland laws.

63.    The mortgage contracts governing the relationship between Yates and Fannie Mae and the between the members of the Shellpoint Inspection Fee Usury Class and the Lender incorporate all Maryland laws and judicial decisions and have not been modified to disavow Maryland law in any respect. Such amendments would not be enforceable even if they existed (and they do not) since the Yates Loan and the loans of the Shellpoint Inspection Fee Usury Class members are all associated with Maryland real property and subject to Maryland laws.

22

64.    Shellpoint and Fannie Mae were not entitled to charge or collect any property inspection fee but they did so anyway in violation of COM. LAW § 12-121(b), *Taylor*, 344 Md. at 584, and *Kemp II.*

65.    Subtitle I of Title 12 of the Commercial Law Article barred Defendants from imposing and collecting the property inspection fee since "usury" is defined broadly as charging an amount in "interest" greater than what Subtitle 1 permits and "interest" likewise is broadly defined as including not only the interest charged on a loan, but also other fees and charges. *See e.g.* COM. LAW § 12-101(e)(m).  Charging the Yates Loan and the loans of the members of the Proposed Classes  for property inspection fees barred by COM. LAW § 12-121(b) are charges in an amount greater than allowed under Maryland law and subject to claims asserted by Yates pursuant to COM. LAW § 12-114(a)(1)(ii). *See also Kemp II.*

66.    At all times relevant and material to this action, Shellpoint and Fannie Mae have known or should have known that neither were permitted to require the imposition of property inspection fees to the mortgage account of Yates or the Yates Loan and the loans of all of the members of the Proposed Classes since all persons are expected to know the law and since the 1990s the law in Maryland has been clear.

67.    COM. LAW § 12-114(b)(1)(ii) provides that Shellpoint shall forfeit to borrowers like Yates and the members of the Shellpoint Inspection Fee Usury Class the sum of $500 for any violation, including the assessment of so-called inspection fees, of the subtitle including COM. LAW § 12-121(b).

68.    COM. LAW § 12-114(b)(1)(ii) provides that Fannie Mae shall forfeit to borrowers like Yates and the Fannie Mae Inspection Fee Usury Class members the sum of $500 for any

23

violation, including the assessment of so-called inspection fees, of the subtitle including COM. LAW § 12-121(b).

69.     Fannie Mae is also vicariously liable for the damages sustained Yates and the Fannie Mae inspection Fee Usury Class members in violation of COM. LAW § 12-121(b) on its behalf.

70.     Fannie Mae is also vicariously liable for the damages sustained by Yates and the Shellpoint Inspection Fee Usury Class during anytime that Fannie Mae held the mortgage loan and property inspection fees were charged by Shellpoint.

71.     Yates and the Fannie Mae Inspection Fee Usury Class and the Shellpoint Inspection Fee Usury Class members are entitled to the sum of $500 for each instance in which Shellpoint and Fannie Mae has directly or indirectly imposed inspection fees against Yates Loan and the loans of the Fannie Mae Inspection Fee Usury Class and the Shellpoint Inspection Fee Usury Class members in violation of COM. LAW § 12-121(b).

## COUNT II: VIOLATIONS OF MARYLAND'S CONSUMER DEBT COLLECTION ACT("MCDCA"), COM. LAW § 14-201, *et seq.,* & MARYLAND CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 *et seq.*
### (On behalf of the Plaintiff Individually and on behalf of the Fannie Mae Inspection Fee Usury Class and the Shellpoint Inspection Fee Usury Class)

Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 25 of 72

72.     Yates adopts by reference the factual allegations contained in the preceding paragraphs of this Amended Complaint with the same effect as if herein fully set forth. This claim is brought on behalf of Yates individually and as the Named Plaintiffs on behalf of the Fannie Mae Fee Usury Class and the Shellpoint Inspection Fee Usury Class against Shellpoint and Fannie Mae respectfully.

73.     At all times described herein since October 1, 2018 and also three years before the commencement of this action, Shellpoint and Fannie Mae have acted as collectors by directly or indirectly using methods of collection through the imposition and collection of property inspection fees that are barred as a matter of law onto the mortgage accounts of borrowers such as Yates and members of the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class.

74.     Yates and members of the Proposed Classes mortgage loans were used for personal, consumer purposes related to their homes and real property. COM. LAW §14-201(b).

75.     Shellpoint and Fannie Mae are aware of the Federal and State laws governing their activities, the contracts governing their relationships with the putative class members, and the precedents of the Maryland Court of Appeals described herein but recklessly disregarded those laws and duties without any consideration of the negative consequences to Yates or Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members respectfully.

76.     Shellpoint, directly and on behalf of Fannie Mae, also attempted to collect and did in fact collect unlawful property inspection fees from Yates and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members in violation of Maryland law which governs their mortgage loans. Other mortgage servicer/collectors like Shellpoint also took similar actions on behalf of Fannie Mae with other members of the Fannie Mae Inspection Fee Usury Class.

77.     Maryland's debt collection and mortgage lending laws and Shellpoint's and Fannie Mae's duties under Maryland and Federal law do not permit them to utilize methods and means of collection not permitted by law or the relationship governing the parties. Shellpoint and Fannie Mae know the law. However, each knowingly and recklessly attempted to interfere or otherwise

infect Yates' and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members' rights on the basis of alleged sums not lawfully due. By such acts Shellpoint and Fannie Mae have engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f. COM LAW §14- 202(11).

78.    Alternatively to the claim stated in the prior paragraph, Shellpoint's and Fannie Mae's knowing and/or reckless disregard to "claim, attempt, or threaten to enforce a right" to collect property inspection fees from Yates and the members of the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class was "with knowledge that the right does not exist." Such conduct alternatively violated COM LAW §14- 202(8).

79.    Shellpoint's and Fannie Mae's violations of the MCDCA are also *per se* violations of the MCPA. COM. LAW § 13-301(14)(iii).

80.    The mortgage loan servicing and collection practices described herein by Shellpoint and Fannie Mae, as set forth herein, are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq.*

81.    COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of the property inspection fees by Shellpoint and Fannie Mae (indirectly through its agent Shellpoint and other similar agent) from the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members related to the Defendants' consumer, debt collection practices involves both the extension of credit and the collection of debts.

82.    COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Shellpoint on its behalf and on behalf

26

of Fannie Mae in relation to the Named Plaintiffs and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members.

83.    The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive. COM. LAW §§13-301(1) and (3).

84.    Shellpoint's and Fannie Mae's acts and omissions described herein include but are not limited to seeking and demanding and collecting property inspection fees not lawfully imposed on Maryland borrowers and therefore not due from Yates and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members, constitutes unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

85.    Yates and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members reasonably relied upon the direct and indirect material acts, actions, and omissions of Shellpoint and Fannie Mae as exemplified *supra* and further demonstrated herein (i) by their communications with Shellpoint and Fannie Mae, and (ii) their payment of the illegal property inspection fees demanded by Shellpoint and Fannie Mae either through Shellpoint or other similar agents and collectors on behalf of Fannie Mae in a manner as Shellpoint acted). Shellpoint's acts or omissions, as well as the acts or omissions of other collectors on behalf of Fannie Mae, on its behalf and on behalf of Fannie Mae, are simply unreasonable, unfair, abusive, and deceptive.

86.    Had Shellpoint and Fannie Mae not acted unfairly and deceptively, Yates and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members would not have suffered the damages and losses they have described *supra.*

87.    Plaintiffs have pled sufficient facts to put Shellpoint and Fannie Mae on notice as to the claims against each as exemplified *supra* (i.e. dates of key acts and representations of Shellpoint and Fannie Mae and its agents and representatives and platforms; and the regulatory and statutory duties of Shellpoint and Fannie Mae) which each simply ignored and thereby infected the subject transactions to ensure harm and damage to Yates and the Shellpoint Inspection Fee Usury Class and the Fannie Mae Inspection Fee Usury Class members.

88.    In the alternative that the Court finds Fannie Mae is not directly or vicariously liable to the Yates' claims under the MCDCA and MCPA for the acts and omissions of Shellpoint on its behalf, Fannie Mae is liable for the acts and omissions under the pursuant to the doctrine of *respondeat superior* for the acts and omissions of Shellpoint acting on its behalf since it engaged and authorized Shellpoint to communicate with Yates and the Fannie Mae Inspection Fee Usury Class members in relation to their mortgages subject to this action and did not utilize reasonable standards and methods to ensure that Shellpoint was not imposing and collecting sums from its customers which are not permitted under Maryland laws governing its relationship with the Shellpoint Inspection Fee Usury Subclass and the Fannie Mae Inspection Fee Usury Class members.

## PRAYERS FOR RELIEF

A.  WHEREFORE, Pursuant to Count I of this Amended Class Action Complaint, Named Plaintiff requests the Court to certify the Fannie Mae Inspection Fee Usury Class and Shellpoint Inspection Fee Usury Class pur-

suant to MD. RULE 2-231 and appoint the Named Plaintiff as class repre-

sentative and the undersigned counsel as Class Counsel for the class and

subclass;

B.   WHEREFORE, Pursuant to Count I of this Amended Class Action Com-

plaint, Named Plaintiff and the Fannie Mae Inspection Fee Usury Class

members ask this Court to determine the issue of Fannie Mae's liability

to the Fannie Mae Inspection Fee Usury Class members and grant a money

judgment in their favor and against Fannie Mae and order Defendant Fannie

Mae to pay and forfeit pursuant to COM. LAW § 12-114(b)(1)(ii) to the

Named Plaintiff and the Fannie Mae Inspection Fee Usury Class mem-

bers $500 for each violation of COM. LAW § 12-121(b) and reasonable

attorney fees and costs for the imposition of property inspection fees by

it onto the accounts of the Named Plaintiff and the Fannie Mae Inspection

Fee Usury Class members in a total sum in excess of $75,000.00 (on a

aggregated basis for the Plaintiff and Fannie Mae Inspection Fee Usury

Class.

C.   WHEREFORE, Pursuant to Count I of this Amended Class Action Com-

plaint, Named Plaintiff and the Shellpoint Inspection Fee Usury Class

members ask this Court to determine the issue of Shellpoint's liability to

the Shellpoint Inspection Fee Usury Class members and grant a money

judgment in their favor and against Shellpoint and order Defendant Shellpoint

to pay and forfeit pursuant to COM. LAW § 12-114(b)(1)(ii) to the Named

Plaintiffs and the Shellpoint Inspection Fee Usury Class members $500

for each violation of COM. LAW § 12-121(b) and reasonable attorney fees and costs for the assessment of property inspection fees to it, directly or indirectly, in a total sum in excess of $75,000.00 (on a aggregated basis for the Plaintiffs and the Shellpoint Inspection Fee Usury Class members). In the alternative, Named Plaintiff and the Shellpoint Inspection Fee Usury Subclass request that the Court find Shellpoint vicariously liable to Shellpoint Inspection Fee Usury Class members for the statutory damages they are entitled to as a result of Shellpoint's violations on behalf of Fannie Mae.

D.  WHEREFORE, Pursuant to Count II of this Amended Class Action Complaint, Named Plaintiffs request the Court to certify the Fannie Mae Inspection Fee Usury Class and the Shellpoint Inspection Fee Usury Class pursuant to Md. Rule 2-231 and appoint the Named Plaintiff as class representative and the undersigned counsel as Class Counsel for the class and subclass;

E.  Pursuant to Count II of this Amended Class Action Complaint, Named Plaintiffs and the Fannie Mae Inspection Fee Usury Class members also ask this Court to determine the issue of Fannie Mae's liability to the Fannie Mae Inspection Fee Usury Class under the MCDCA and MCPA and award (i) actual damages for its violations of COM LAW §14-202(11), COM LAW §14-202(8), COM. LAW § 13-301(1)(3), and COM. LAW §§13-303(4)(5) pursuant to COM. LAW § 14-203 and COM. LAW § 14-408 in a

30

sum in excess of $75,000 (on a aggregated basis for the Plaintiff and Fannie Mae Inspection Fee Usury Class members) and (ii) reasonable attorney fees and reasonable costs as permitted and authorized by COM. LAW § 13-301(14)(iii) and COM. LAW § 13-408(b).

F.   Pursuant to Count II of this Amended Class Action Complaint, Named Plaintiffs and the Shellpoint Inspection Fee Usury Subclass members ask this Court to determine the issue of Shellpoint's liability to the Shellpoint Inspection Fee Usury Class members under the MCDCA and MCPA and award (i) actual damages for its violations of COM LAW §14-202(11)(8), COM. LAW § 13-301(1)(3), and COM. LAW §§13-303(4)(5) pursuant to COM. LAW § 14-203 and COM. LAW § 14-408 in a sum in excess of $75,000 (on a aggregated basis for the Plaintiffs and Shellpoint Inspection Fee Usury Class) and (ii) reasonable attorney fees and reasonable costs as permitted and authorized by COM. LAW § 13-301(14)(iii) and COM. LAW § 13-408(b).

G.   WHEREFORE, Named Plaintiffs request the Court provide such other or further relief as the Court deems appropriate including attorney fees and costs in relation to Count of this Complaint.

Case 8:21-cv-03044-PX Document 1-2 Filed 11/29/21 Page 32 of 72

Respectfully submitted,

Scott C. Borison, CPF # 9601290001
Borison Firm, LLC.
1400 S Charles St.
Baltimore MD 21230
Phone: (301) 620-1016
Scott@Borisonfirm.com

31

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing and attached demand for Jury Trial and Exhibit will be served upon the Defendants along with the renewed writs of summons issued by the Clerk of the Court.

_____

Scott C. Borison

Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 33 of 72

## JURY DEMAND

Plaintiff requests a trial by jury on all claims stated herein.

Scott C. Borison
*Attorneys for the Plaintiff*

Case 1:21-cv-03044-RDB   Document 1-2   Filed 11/29/21   Page 34 of 72

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing and attachments will be served on the Defendants along with the new Writs of Summons issued by the Clerk of the Court.

Scott Bonson

Case 1:21-cv-03044-RDB  Document 1-2  Filed 11/29/21  Page 35 of 72