**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

IRENE YATES,                                    *

               Plaintiff            *

         v.                          *          Civil Case No. 8:21-cv-3044-TDC

NEWREZ, LLC,                                *

           Defendant           *

**MEMORANDUM OPINION**

This is a case concerning a class of Maryland property owners' efforts to seek redress for being unlawfully charged home inspection fees related to their purchased properties.  Pending before the Court is Non-Party Safeguard Properties Management LLC's (Safeguard) Motion to Quash Plaintiff Irene Yates' Subpoena.  ECF No. 32.  As discussed below, and of importance to my decision, Plaintiff has substantially narrowed the subpoena, for the time being, *see* ECF No. 35, at 14-17, and Safeguard has refused to provide any information.  In light of such and for the additional reasons discussed below, Safeguard's Motion to Quash is DENIED, with prejudice, regarding those materials ordered to be produced by this Opinion.  Regarding those materials which this Opinion does not order production, Safeguard's Motion to Quash is DENIED without prejudice.  Safeguard shall respond to the subpoena, as narrowed below, within thirty days of this decision.

**BACKGROUND**

According to Plaintiff's Complaint, on July 19, 2004, Plaintiff Irene Yates purchased a property in Lanham, Maryland.  ECF No. 15, at 5, 13.  On April 2, 2008, Ms. Yates and her

husband, who has since passed, refinanced their property via a loan from Chevy Chase Bank, a Maryland based company that provided banking services in the Greater Washington, D.C. metropolitan area. *Id*. at 13. Chevy Chase Bank made the loan with the approval of Federal National Mortgage Association, commonly known as Fannie Mae, which agreed to acquire the loan shortly after its terms were finalized. *Id*. Chevy Chase Bank retained the right to collect payment on the loan. *Id*.

Under the terms of the loan, Ms. Yates, Chevy Chase Bank, and Fannie Mae agreed to abide by Maryland law. *Id*. Specifically, the parties agreed that Chevy Chase Bank and its assigns, including Fannie Mae, may not charge fees that are expressly prohibited by controlling applicable federal, state and local statutes, regulations, and administrative rules and orders, as well as applicable final, non-appealable judicial decisions. *Id*. The terms of the agreement have not since been modified. *Id*. at 14.

On June 1, 2018, Defendant Shellpoint Partners LLC, a Delaware-based limited liability company owned by New Residential Investment Corporation – also based in Delaware, acquired the rights to collect payments on the loan from Chevy Chase Bank. *Id*. at 5, 14. On approximately June 22, 2018, Shellpoint, on behalf of Fannie Mae, sent Ms. Yates a periodic statement. *Id*. at 14. Therein, Shellpoint represented to Ms. Yates that it sought to collect from her a $105.00 appraisal fee, which Ms. Yates alleges was actually a property inspection fee. *Id*. According to Ms. Yates, this was the first time she received notice of the fee. *Id*. The same statement also included a $20.66 fee specifically labeled an inspection fee to which Ms. Yates had never agreed nor previously received notice. *Id*. Ms. Yates continued to receive monthly statements through the end of 2018, which included inspection fee charges of similar amounts. *Id*. at 14-16.

2

On June 22, 2021, Ms. Yates, on behalf of a class of similarly situated individuals, filed this case in Prince George's County Circuit Court, alleging that Shellpoint's and Fannie Mae's charging of inspection fees to Ms. Yates and others similarly situated individuals violated Maryland State law.  ECF No.1, at 1.  On October 5, 2021, Ms. Yates filed an amended complaint in State court alleging that the Defendants violated the Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, and specific provisions of Maryland state law prohibiting the collection of inspection fees after the origination of a loan.  ECF No. 1, at 2.  On November 29, 2021, Defendants removed the case to this Court.  ECF No. 1.  On November 30, 2021, Plaintiff noticed the voluntary dismissal of her claims against Fannie Mae, without prejudice.  ECF No. 3.

On January 10, 2022, Plaintiff filed a Second Amended Complaint.  ECF No. 15.  In addition to including the information and claims described above, the Second Amended Complaint not only sought relief on behalf of a class of Plaintiffs, but alleged that the actions allegedly taken by the remaining Defendant was indicative of a regular practice by numerous lending companies in Maryland.  ECF No. 15-1, at 25-28.  Accordingly, the Second Amended Complaint sought relief from a Defendant class, as well, defined as: "all approved mortgage servicers and sub-servicers a) of a mortgage loan that makes the mortgage subject to Maryland law; b) who [are] responsible for collecting monthly, mortgage payments . . . and the administration and accounting of those payments on behalf of Fannie Mae or another owner of a mortgage in the State of Maryland; and c) who does so in relation to any member of the [Plaintiff] class.  *Id*. at 26.  On February 8, 2022, the Court entered a Scheduling Order in this case, requiring among other things, that all discovery be completed by June 23, 2022.  ECF No. 20.  The schedule did not include any deadlines specifically related to class discovery or motions for certification of a Plaintiff or a Defendant class.  *Id*.

On February 24, 2022, Plaintiff sent a subpoena for a range of documents to Fannie Mae, relating to, among other things, the names of other mortgage servicers and sub-servicers who charged inspection fees.  ECF No. 32-2, at 6; *see also* ECF No. 40, at 4-5, 11-12.  Fannie Mae initially refused to produce any documents, but after some discussion, the parties were able to reach agreement on a narrowed request.  ECF No. 40, at 11.

On the same day, Plaintiff also sent a subpoena to Non-Party Safeguard Properties Management, LLC, a corporation that providers property inspection services to mortgage servicers around the country, including in Maryland.  ECF No. 32, at 2.  The subpoena requested a wide range of documents dating back to the year 2000, relating to among other things the properties that Safeguard inspected, the mortgage servicers with which it contracted to provide these inspection services, and the amount that Safeguard charged mortgage servicers for these inspection services. *Id*. at 8-13.  Safeguard, in response, refused to produce any information, challenging the relevance of the discovery sought, as well as the burden producing it would impose on a non-party like Safeguard.  ECF No. 32-3.  The parties conferred as to whether they could reach agreement on a narrowed request, but were unsuccessful in reaching a resolution.  ECF No. 32-4.

On April 25, 2022, Safeguard moved to quash the subpoena, relying on the arguments mentioned above, and arguing that it should not be required to produce any information.  ECF No. 32, at 1-4.  On April 29, 2022, this case was assigned to my Chambers for resolution of any discovery disputes.  ECF No. 33.  On May 9, 2022, Plaintiff responded, addressing the substance of Safeguard's arguments, but also significantly narrowing the documents requested.  ECF No. 35, at 14-17.  For example, instead of its initial request for all documents related to all property inspections that have been conducted over the last twenty-two years, Plaintiffs asked, for the time being, for documents sufficient to identify the mortgage servicers in Maryland for whom

Safeguard has provided property inspections services using Safeguard's current storage system. *Id*. at 15.  On May 18, 2022, Safeguard filed its Reply in Support of its Motion to Quash, reiterating its position from its Motion to Quash; notably, Safeguard asserted that Plaintiff's attempt to narrow the subpoena was merely illusory and made no difference regarding the burden on Safeguard, the relevance of the documents requested, and resultingly, Safeguard's position on Plaintiff's subpoena.  ECF No. 37, at 10.

On May 23, 2022, the Court held a scheduling conference with the parties to address among other things the discovery schedule related to certification of the Plaintiff and Defendant classes. *See e.g.* ECF No. 40, at 6, 9, 11, 30.  At the conference, Defendants initially asserted that no discovery was needed to decide whether a Defendant class should be certified because, by definition, the Defendant class Plaintiff proposed is legally insufficient.  *Id*. at 6.  Plaintiff, in response, asserted that discovery was necessary to determine whether viable Plaintiff and Defendant classes could be certified.  *Id*. at 6-7.  Towards the end of the hearing, the Court suggested the parties confer and jointly propose a schedule for discovery regarding both the Plaintiff and Defendant classes, ultimately culminating in deadlines for a motion to certify both classes.  *Id*. at 25-30.

On May 31, 2022, the parties filed a Joint Motion to Amend the Scheduling Order, setting a deadline of September 16, 2022, for Plaintiff's motions to certify the Plaintiff and Defendant classes.  ECF No. 42, at 1.  Therein, Defendant conceded that although it initially sought to strike Plaintiff's request that the Court certify a Defendant class as legally insufficient, before any discovery had been conducted, it would simply oppose Plaintiff's requests for certification.  *See id.* at 2 ("because the Court is allowing class discovery to proceed and because the burden of certifying a class—plaintiff and defendant—rests with Plaintiff, Shellpoint will forego filing a

5

motion to strike at the conclusion of class discovery and will simply oppose Plaintiff's motion for certification."). The parties also requested that the deadline for fact discovery be extended so the parties, for the time being, could "focus on the class issues." *Id.*

## STANDARD OF REVIEW

Regardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must begin by reviewing Defendant's subpoenas under the relevancy standards set forth in Rule 26(b). *Crete Carrier Corp. v. Sullivan and Sons, Inc.*, No. ELH-21-0328, 2022 WL 1203652, at *15 (D. Md. Apr. 21, 2022). Pursuant to Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

However, a subpoena to a third party which "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden," must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). As explained, in *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012):

> Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45[(d)](3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008). This inquiry is "highly case specific" and involves "an exercise of judicial discretion." *Id.* "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005) (internal quotation marks omitted).

## ANALYSIS

As narrowed, Plaintiff's subpoena requests: 1) a report generated by [Safeguard's] current

operating system that identifies the mortgage servicers in Maryland for whom Safeguard has conducted property inspections in Maryland on Fannie Mae loan[s] since the new computer system was implemented", ECF No. 35 at 15; 2) "written contractual agreements for home inspection services between Safeguard and Fannie Mae and between Safeguard and any mortgage servicers for whom Safeguard performs property inspection services in Maryland," dating back a reasonable time period agreed to by the parties, *id*.; and 3) a "report generated by its current computer system" "which identif[ies] the sums of money charged by [Safeguard] to the members of the Defendant class, Shellpoint, and Fannie Mae for property inspections or property preservation services in the State of Maryland from January 1, 2000." *Id*. at 16.

Additionally, Plaintiff requests that Safeguard produce a witness to testify as to various matters, in lieu of broad document requests that were included in its initial subpoena. Specifically, Plaintiff requests that Safeguard produce a witness who can testify about: 1) "[Safeguard's] electronic records management and reporting capabilities relating to reports and data summaries concerning property inspections and property preservation services," *id*. at 16; 2) "[Safeguard's] current and historical capabilities regarding its documents and data that may be used to identify with specificity members of the Defendant class and members of the [Plaintiff] class. *Id*. at 16-17. Plaintiff also requests that Safeguard's representative be prepared to testify on various other matters including the authentication of documents produced, the contents of contracts and documents produced by Safeguard, Safeguard's use of scripts during inspections, and electronic communication practices related to communications between Safeguard and mortgage servicers performing work in Maryland. *Id*. at 17-18.

As noted above, Safeguard opposes the subpoena on account of the alleged lack of relevance of the materials sought and the burden of production. Specifically, Safeguard argues

that the Subpoena: 1) "has virtually no relationship to the Plaintiff"; and 2) seeks discovery that "is not proportional to the needs of the case" and is "unduly burdensome" to Safeguard. ECF No. 32, at 7. I address each argument, in turn below, in the context of Plaintiff's subpoena as narrowed in its Opposition brief.

## I.      The Information Sought Is Relevant.

Safeguard's complaint that it lacks information relevant to Ms. Yates' property overlooks that this case is a class action and the parties are in the midst of discovery relevant to whether classes of Plaintiffs and Defendants may be certified. Likewise, Safeguard's argument that discovery regarding the Defendant class is improper, as a matter of law, conflicts with the most recent developments in the case. Finally, the information the subpoena seeks is relevant even if it provides only indirect evidence of a violation of State law.

A subpoena must seek information relevant to the matter before the Court. Fed. R. Civ. P. 26(b)(1). Although Rule 26 does not define relevancy, it has been "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *O'Malley v. Trader Joes East, Inc.*, No. RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (internal citations and quotation marks omitted); *see also Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010). "Knowledge of the claims advanced by Plaintiff and the evidentiary proffers made in the course of various court proceedings informs the Court's judgment as to what information can be considered relevant to Plaintiff's case." *Enovative Technologies, LLC v. Leor*, NO. JKB-14-3956, 2015 WL 13021884, at *1 (D. Md. Aug. 7, 2015). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

In a case involving allegations that a Defendants has harmed a Plaintiff class, information is relevant, for example, if it concerns Defendant's actions harming any member of the putative Plaintiff class in the same or a similar way to which Plaintiff alleges Defendant has harmed the named Plaintiff. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (explaining typicality: "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). This type of discovery regarding injuries to class members is relevant even if a class has yet to be certified; in fact, it is often necessary to determine whether a class should be certified. *See Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 185 (D. Md. 2003) ("Plaintiffs were entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met"); *see, e.g., Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 201–02 (D. Md. 2001). Whether other individuals have been injured in a way similar to which Plaintiff has been injured is also relevant to demonstrating whether the proposed class includes a sufficiently large number of individuals, and whether these individuals have been harmed in a common way. Fed. R. Civ. P. 23. Plaintiff, in this case, does not only allege that she has been harmed, but specifically seeks relief on behalf of a group of property owners who she alleges have also been charged unlawful inspection fees.

The scope of relevant discovery is broadened where, as here, Plaintiff alleges that a class of Defendants was responsible for the harm experienced by the Plaintiff class. Accordingly, even if a third party may not have information relevant to how a particular Defendant harmed a particular Plaintiff, so long as the information the third party has relates to how a member of the Defendant class has harmed a member of the Plaintiff class and the harm is typical of the type of harm suffered by the named Plaintiff, the information will be relevant to class certification. *See Bell v. Brockett*, 922 F.3d 502, 510 (4th Cir. 2019) ("Defendant class actions, like plaintiff class

actions, must comply with Rule 23.").  Here, it is undisputed that Safeguard, for a fee, provides property inspection services to mortgage servicers working in Maryland, servicers which Plaintiff alleges have charged members of the Plaintiff class inspection fees, as Plaintiff was.  ECF No. 35-1, at 5.

As discussed below, this does not automatically mean that the information must be produced, particularly where the information is sought from a third party.  Nonetheless, to the extent that Safeguard argues that the information it possesses is not relevant to this proceeding merely because it does not possess any information regarding Ms. Yates' property, the argument disregards Plaintiff's specific class-wide allegations regarding both the proposed Plaintiff and Defendant classes, as well as the amended scheduling order which provides the parties a period of time specifically for the exchange of information relevant to whether a Plaintiff and Defendant class should be certified.

Relatedly, to the extent that Safeguard's relevancy argument rests on a conclusion that "there is no certifiable Defendant class", I cannot, and it would be improper to, make that finding at this time before the parties have completed class-wide discovery.  ECF No. 37, at 3.  As noted above, Defendant initially sought to strike Plaintiff's allegations regarding the existence of a Defendant class before any discovery had been conducted.  Safeguard cites that filing in support of its position.  *Id*.  However, Defendant, after a status conference with the Court, abandoned that position and instead sought to oppose certification of each class after discovery has been completed.  Accordingly, it would be contrary to the parties' current positions, the parties' conference with the Court, and the amended schedule to conclude that the information Plaintiff seeks from Safeguard is irrelevant because allegedly, as a matter of law, no Defendant class can exist.

Finally, Safeguard's argument that the information it has is not relevant to the case because it concerns the amount of fees it charged mortgage servicers, but not the amount that mortgage servicers charged members of the Plaintiff class is similarly unavailing. *Id*. Information sought in discovery need not itself be direct evidence of a legal violation, as Safeguard's argument presumes; rather, it must only be of some additional benefit to the resolution of a claim or defense. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *see also EEOC v. Western Electric Co.*, 713 F.2d 1011, 1014 (4th Cir. 1983) (explaining that under ordinary principles of proof, a party may meet its burden by direct or indirect evidence). Plaintiff alleges that the information is relevant to: 1) its allegations that the visual inspections are cursory affairs that serve primarily as a means of generating revenue for mortgage servicers – further highlighting the illegality of the charges, and 2) which mortgage servicers are paying third parties fees for inspections, and thus may be passing on charges to consumers.[1]  ECF No. 35, at 4.  Although I agree with Safeguard, as discussed below, that the indirect nature of the evidence, balanced against the burden on Safeguard of producing it, is germane to the proportionality of the request, Plaintiff has sufficiently explained how the information is relevant to its claims.[2]

---

[1] Plaintiff's provision of an explanation of the relevance of the information sought distinguishes this case from *Benson v. Double Down Interactive*, upon which Safeguard relies.  2020 WL 4569596, at *9 (W.D. Wash. Aug. 7, 2020) (explaining its decision to quash the subpoena: "How will this information show that all the elements of Plaintiffs' claims are amenable to common questions? How will this information prove that Benson and Simonson's casino app experiences were typical of the class? Plaintiffs are silent on these issues.").  Furthermore, in *Benson*, the Court agreed not to restrict discovery related to users in the State of Washington, but the plaintiffs there also requested nationwide information.  *Id*. at *3.  In this case, Plaintiff seeks information related to mortgage servicers responsible for properties in Maryland, not nationwide.

[2] Safeguard also cites *Wilson v. Conair Corp.*, No. 1:14-cv-894-WBS-SAB, 2015 U.S. Dist. LEXIS 163098, at *6 (E.D. Cal. Dec. 4, 2015) for the proposition that before seeking discovery from non-parties, a Plaintiff must make a *prima facie* showing that that it can meet the requirements of Federal Rule of Civil Procedure 23 or that the discovery is likely to produce substantiation of the class allegations.  ECF No. 37, at 5.  I question the importance of the cited

**II.** **Production of the Information Sought in the Subpoena, As Narrowed, Would Not Impose an Undue Burden on Safeguard and, Thus, Is Proportional to the Case.**

Although information may be relevant, that does not, by itself, determine whether it must be produced.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "discovery, like all matters of procedure, has ultimate and necessary boundaries") (internal citation and quotation marks omitted).  In addition to being relevant, discovery "must be measured against the yardstick of proportionality." *Fish v. Air and Liquid Systems Corporation*, No. GLR-16-496, 2017 WL 697663, at *3 (D. Md. Feb. 21, 2017) (internal citation and quotation marks omitted); *see Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012).  Under Rule 26, whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The Fourth Circuit has held that where the case involves a request to a non-party the Court must conduct a more demanding variant of the proportionality analysis. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).  The court explained further:

> On the benefit side of the ledger, courts should consider not just the relevance of information sought, but the requesting party's need for it. The information sought must likely (not just theoretically) have marginal benefit in litigating important issues. . . .  Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable

decision to this case, as Safeguard provides no binding authority from this circuit adopting this rule.  Regardless, the facts of *Wilson* are distinct from this case.  In *Wilson*, the Court had already granted discovery as to whether the particular defect plaintiff claimed harmed her was present in other models of the product at issue, but she sought further discovery from the third party. *Id*., at *7.  In response, the third party agreed to provide some discovery, but refused to provide other information. *Id*., at *8-9.  Here, Safeguard seeks to be shielded from all discovery despite the alleged relevance of the information Plaintiff seeks.

information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.

On the burden side, district courts should of course consider the dollars-and-cents costs associated with a large and demanding document production. But there are other cognizable burdens as well. For example, a subpoena may impose a burden by invading privacy or confidentiality interests. Courts may consider the interests of the recipient of the subpoena, as well as others who might be affected.

*Id*. at 189–90 (internal citations and footnotes omitted). "This undue-burden analysis must be conducted based on the concrete facts and issues in the litigation, not on vague generalities or speculation." *Id*. at 194. Nonetheless, the movant seeking to quash the subpoena still "bears the burdens of proof and of persuasion." *Id*. at 189 n.2. In determining whether the movant has met its burden of proof, a court may properly consider whether a non-party has produced responsive documents, or seeks to avoid production altogether. *Id*. at 190.

Safeguard alleges that the subpoena, even as narrowed, would pose an undue burden on the company and thus seeks documents that are not proportional to the needs of the case. Specifically, Safeguard makes several global arguments regarding the scope of the subpoena.

First, Safeguard argues that because the subpoena seeks information going back twenty-two years, Safeguard would need to collect information from an older, inactive system that is no longer in use. *See e.g.* ECF No. 32, at 10. Plaintiff, for the time being, explicitly abandons its request for individual documents from the older, inactive system in its narrowed requests, other than for contracts Safeguard has with mortgage servicers working in Maryland. ECF No. 35, at 15-16. Regarding these contracts specifically, Plaintiff requests a meet and confer as to whether the parties can reach agreement on a reasonable time frame for production. *Id*. I agree that this is a reasonable request as it accords with the Local Rules of this Court regarding discovery disputes. Local Rules U.S. District Court for the District Court of Maryland, Local Rule 104.7 (2021). I

cannot agree that any production of contractual documents for any time period – no matter how short – would impose an undue burden on Safeguard.  Although I make no determination, at this point, as to what a reasonable time frame may be, important considerations may include, but are not limited to, whether a more limited initial production reveals information relevant to a claim or defense and, thus, supports the production of additional documents of the like; the total number of contracts; the length of each contract, on average; whether the contracts follow a standard format or are highly individualized; whether the contracts include information regarding the scope of the inspection, the charge for any inspection, the purpose of the inspection, and whether the charge is passed on to the property owner.

Second, Safeguard argues that compliance with the subpoena would require the production of millions of documents, including the review and potentially the production of 4.6 million work orders.  *See e.g.* ECF No. 32, at 8.  As noted above, Plaintiff has abandoned their request for work orders for the time being.  Rather, Plaintiff, in her narrowed subpoena, seeks only printouts of information compiled from Safeguard's current computer system and its contracts with mortgage servicers in Maryland.  *See* ECF No. 35, at 15-6 (requesting narrowed proposed orders regarding Request Nos. 2 and 6).  I cannot conclude, at this time, that the production of the contracts alone would impose an undue burden on Safeguard and, thus, would not be proportional to the needs of the case.  As noted above, Plaintiff has agreed to discuss a narrowed time frame applicable to the contracts.  Without any information regarding the contents or length of the contracts or the applicable time frame, the demand is not *per se* unreasonable.

Third, Safeguard argues that Plaintiff should request the information from Shellpoint, or other mortgage lenders directly.  ECF No. 32, at 9.  The argument disregards the nature of Plaintiff's claims and fails to account for the fact that the alternatives which Safeguard proposes

would, in fact, be less efficient.  As noted above, Plaintiff alleges that a class of Defendants engaged in the unlawful practice of charging property owners' inspection fees.  Accordingly, although Defendant has information related to its own charging practices, there is no reason to believe, and Safeguard does not provide any, that Shellpoint has information regarding what other servicers charge property owners in Maryland.  Safeguard's other alternative that Plaintiff should request the information directly from third-party mortgage servicers in Maryland to see if they might be members of the Defendant class would, as Plaintiff highlights, be less efficient.  ECF No. 32, at 14; ECF No. 35, at 7.  Subpoenaing potentially hundreds of separate mortgage servicers not yet parties, who, in turn, might object, and which courts might have to resolve would potentially impose undue burdens on several additional entities and persons, as well as the judicial system. *Stone v. Trump*, 356 F.Supp.3d 505, 513 (D. Md. 2018) (deciding whether to order discovery: "a court may consider its interest in judicial economy and in moving a case toward a conclusion").  Likewise, Safeguard's argument that it has information related to only a fraction of mortgage lenders in Maryland is unpersuasive.  A single third party need not have all of the information relevant to the case to be subject to discovery.  Here, as Safeguard concedes, it serves several mortgage lenders in Maryland.  If it did not, it would not have to review the large number of documents it claims it does to respond to Plaintiff's request for contracts.  ECF No. 32, at 10.  Merely because Safeguard does not have all the information, does not exempt it from responding to the subpoena.

Fourth, Safeguard argues that production of the contracts, which Plaintiff requests under the subpoena as narrowed would divulge its proprietary and trade secrets, as well as those of its mortgage lender clients.  ECF No. 32, at 7.  Safeguard provides no legal or factual authority in support of its position that: 1) the information is exempt from disclosure; and 2) a party should be

exempt from producing the entirety of a document, a portion of which may be confidential. Although Safeguard argues that Plaintiff, and by extension the Court, should be able to assume the nature of the information solely from the type of business Safeguard conducts, ECF No. 37, at 8-9, these assumptions are insufficient to demonstrate its importance and satisfy the "strong showing" required. *See Innovative Therapies, Inc., v. Meents*, 302 F.R.D. 364, 380 (D. Md. 2014) ("Trade secret or commercially sensitive information must be important proprietary information and the party challenging the subpoena must make a strong showing that it has historically sought to maintain the confidentiality of this information.") (internal citations and quotation marks omitted). Along the same lines, without access to the contractual provisions at issue, I cannot conclude, as Safeguard argues, that any production of the contracts or the information therein would violate confidentiality provisions therein. Furthermore, while the confidentiality of a document, or a portion of the information therein, is a pertinent factor in determining whether it should be produced, the concern is lessened where, as Plaintiff notes, a confidentiality order has been entered. ECF No. 30. To the extent that Safeguard has concerns with the sufficiency of the Confidentiality Order's substance, Safeguard should address them specifically and request greater protection under the Order's terms. *Id.*, at 5. Finally, as discussed above, Plaintiff has agreed to limit the time period for which it seeks contracts; thus, I cannot conclude, at this time, that the burden of reviewing the contracts for such information would be undue.

Fifth, Safeguard alleges that it cannot produce the excel sheets requested in the form Plaintiff has requested them in its narrowed subpoena. ECF No. 37, at 7. Plaintiff contests this point, citing prior representations from Safeguard in a deposition of its corporate representative in another case. ECF No. 35, at 4, n.3. It is unclear from the information before the Court whether Safeguard has the ability to produce the report in the specific form requested. Accordingly, I order

Safeguard respond to the subpoena's narrowed demands for reports in Request Nos. 2, 4, and 6. To the extent that Safeguard is unable to produce the reports requested in the form requested without committing substantial time and/or expense, it should state so with particularity.  If it does so, Plaintiff may seek to depose a representative of Safeguard specifically on the form that reports may be generated in, if any.  *See* ECF No. 35, at 17 (seeking to depose a Safeguard representative on Safeguard's ability to produce summary reports).  Plaintiff may then renew its requests as adjusted based on the responses in the deposition.  If the parties are unable to reach agreement on the requests and the responses thereto, they may return to the Court for further resolution.

Sixth, Safeguard argues that requiring its corporate representative to prepare for a deposition on the topics in the subpoena would require it to review millions of work orders dating back over twenty-two years.  ECF No. 32, at 12.  This argument is derivative of the argument addressed above.  In its opposition, Plaintiff narrowed the topics on which it seeks to depose Safeguard's representative to exclude work orders.  ECF No. 35, at 17-18.  Further, those requests dating back to the year 2000 concern only the use of standard and customary scripts (Topic 5), Safeguard's ability to produce records or summary reports (Topic 6), and Safeguard's electronic communication practices (Topic 7).  *Id*.  I further order other specific modifications to ensure that Safeguard is not subjected to an undue burden.  Regarding the use of scripts (Topic 5) and electronic communications practices (Topic 7), the parties shall meet and confer as to a reasonable time period that the deposition shall cover in line with the narrowing discussed above related to the production of contracts.  If, in the future, Plaintiff is able to demonstrate a need for the complete time period, she may re-raise that need with the Court.  Regarding the use of scripts specifically, other than those related to the named Defendant, the representative shall not be expected to know the contents of any one particular script used at any one point in time, but rather general facts

regarding whether scripts were used, if they were customized, if there were commonalities over time and between types of properties and mortgage servicers served, and the scope of those commonalities.  As discussed above, such facts are relevant to the nature of the inspections at issue and class certification.  Likewise, regarding Topic No. 3, the representative cannot be expected to be aware of the identity of each of the hundreds of servicers Safeguard serves in Maryland. Accordingly, I have limited this request to the means of identifying the identity of servicers with whom Safeguard works.   This is consistent with narrowed Request for Documents No. 7.  ECF No. 35, at 16.  Finally, as Plaintiff has excluded its request for documents under Document Request No. 1 from their subpoena as narrowed, ECF No. 35, at 15, Request No. 1 shall be excluded from Deposition Topic No. 4 for the time being, as well.

## CONCLUSION

For the reasons stated above, I order that Safeguard's motion to quash is DENIED, in part, with prejudice, and DENIED, in part, without prejudice.  Specifically:

- Regarding Document Request No. 2: Within thirty days, Safeguard shall either produce a report generated by its current operating system that identifies the mortgage servicers in Maryland for whom it has conducted property inspections in Maryland on Fannie Mae loans since the new computer system was implemented, showing the number of inspections Safeguard conducted for each, and the time period covered by those inspections or respond that its current operating system cannot produce such a report.  If it cannot produce such a report, or producing such a report would impose substantial time or financial burden, it shall respond to the subpoena stating such with particularity and promptly make its representative available to be deposed regarding Deposition Topic 6.

Once the deposition has occurred, Plaintiff may issue a revised subpoena for any report it reasonably believes Safeguard can produce without substantial time or financial burden.

- Regarding Request No. 4: Within thirty days, Safeguard should produce written contractual agreements for home inspection services between Safeguard and any mortgage servicers for whom Safeguard performs property inspection services in Maryland.  Within ten days, Counsel for Plaintiff and Safeguard shall confer regarding a reasonable time limit on the time-period encompassed by the request if some of the responsive contractual agreements are archived or not current and are, therefore, not readily accessible without expense of substantial time and/or cost.  Guidance is provided in the Memorandum Opinion regarding factors to be considered in determining an appropriate time-period.

- Regarding Request No. 5: No later than one week before any deposition, Safeguard's corporate representative shall produce any documents they utilized to prepare their deposition.

- Regarding Request No. 6: Within 30 days, Safeguard shall produce a report generated by its current operating system that identifies the sums of money charged by Safeguard to mortgage servicers in Maryland for property inspection services since its new computer system was implemented.  If it cannot produce such a report or producing such a report would require substantial time or financial expense, it shall respond to the subpoena stating such with particularity and will make its representative available to be deposed regarding Deposition Topic 6.  Once the deposition has occurred, Plaintiff may issue a revised subpoena for any report it reasonably believes Safeguard can produce without substantial time or financial burden.

- At a time mutually convenient for Plaintiff and Safeguard, but no later than 45 days after the entry of this Opinion and Order, Safeguard shall designate one or more witnesses pursuant to Fed. R. Civ. P. 30(b)(6) and Fed. R. Civ. P. 45 to testify at deposition concerning:

  o Topic 1: Authentication of any records produced by Safeguard in response to the subpoena;

  o Topic 2: Safeguard's contractual relationship(s) and agreement(s) with Fannie Mae, Shellpoint, and members of the putative Defendant class concerning property inspections in Maryland from the date of the first contractual agreement produced in response to Request No. 3 above.  Other than contracts with the named Defendant and Fannie Mae, the representative shall not be expected to know the details of any one particular contract, but rather general facts regarding whether contracts are customized, if there are commonalities between contracts including subject matters therein, the scope of those commonalities and differences between contracts, and the general subject matters that are common between contracts;

  o Topic 3: Means of identifying mortgage servicers for whom Safeguard has provided property inspection services in Maryland since implementation of its current computer operating system relating to such services, with the limitation that the representative shall not be expected to list each during the deposition, as this request is more properly handled through a document request;

  o Topic 4: Data produced by Safeguard in response to Request Nos. 2 and 6 for the time period that begins with the implementation of Safeguard's current operating

system relating to property inspection and property preservation services in Maryland.

o Topic 5: Standard and customary scripts utilized by Safeguard in communicating with property owners or mortgagors concerning property inspections or property preservation services conducted in the State of Maryland for a reasonable time period agreed to by Plaintiff and Safeguard;

o Topic 6: Safeguard's ability to produce records or summary reports from its records management system which identify information about each residential property for which Safeguard has conducted property inspections or property preservation services in the State of Maryland from January 1, 2000 to the present, including whether the records management system identifies: (i) the property owner's name(s); (ii) the property owner's loan number assigned by Safeguard's client; (iii) the type of inspection requested by Safeguard's client; and (iv) the script utilized by Safeguard's inspectors.

o Topic 7: Safeguard's electronic communications practices for communications between Safeguard and Fannie Mae or Safeguard and mortgage servicers, concerning the property inspection or property preservation services performed by Safeguard in the State of Maryland for a reasonable time period agreed to by Plaintiff and Safeguard.

Safeguard may re-raise any concerns in its motion to quash, if Plaintiff subsequently requests discovery beyond what is ordered here.  Regarding any such discovery, Safeguard's motion is denied without prejudice.

So ordered.

Date:   June 10, 2022

_____/s/_____
Ajmel A. Quereshi
U.S. Magistrate Judge