## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

IRENE YATES,

      Plaintiff,

    v.

NEWREZ LLC,
*d/b/a Shellpoint Mortgage Servicing,*

      Defendant.

Civil Action No. TDC-21-3044

### MEMORANDUM OPINION

Plaintiff Irene Yates, acting individually and on behalf of similarly situated individuals, has filed this class action against NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), in which she alleges that Shellpoint illegally charged inspection fees to Maryland homeowners in violation of Maryland law. Yates has filed a Motion for Class Certification, which is now fully briefed. ECF No. 58. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

### BACKGROUND

Shellpoint is a mortgage servicing company that acts on behalf of the Federal National Mortgage Association ("Fannie Mae") and other owners of mortgage loans. The business model of companies like Shellpoint revolves around acquiring mortgage servicing rights, which then permit those companies to service residential mortgage loans in exchange for a portion of the interest payments made on the underlying residential mortgage loans. When a borrower is delinquent by 90 days, Shellpoint may order a property inspection to evaluate the occupancy and

condition of the property, and it continues to conduct inspections once a month after that initial property inspection. To conduct property inspections, Shellpoint engages vendors whose contracts may permit them to charge borrowers for inspections on Shellpoint's behalf.

Under the Maryland Usury Law, with certain exceptions not applicable here, "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." Md. Code Ann., Com. Law § 12–121(b) (LexisNexis 2013) ("Section 12–121(b)"). In 2018, after completing a review of Shellpoint's records that began in 2015, the Maryland Commissioner of Financial Regulation ("MCFR") found that Shellpoint had charged to or collected from Maryland borrowers more than $270,000 in illegal inspection fees. On August 6, 2018, Shellpoint then executed a Memorandum of Understanding with the MCFR under which fines were imposed on Shellpoint, Shellpoint was required to return inspection fees to borrowers, and Shellpoint was required to implement a new system to prevent inspection fees from being charged to Maryland borrowers.

In 2004, Yates purchased a home in Lanham, Maryland. To purchase the property, Yates secured a mortgage loan from Chevy Chase Bank. In 2008, Yates refinanced her mortgage loan through Chevy Chase Bank, which obtained the approval of Fannie Mae, which intended to acquire the loan by assignment and to engage Chevy Chase Bank as its loan servicer. Under the terms and conditions of the mortgage loan, Fannie Mae, Chevy Chase Bank, and Yates agreed that the loan would be governed by Maryland law, including as to express prohibitions on charging certain fees.

In 2018, Shellpoint obtained the mortgage servicing rights to Yates' mortgage loan. In a June 22, 2018 monthly statement, Shellpoint charged Yates $105.00 and $20.66 in property inspection fees. In a July 20, 2018 monthly statement, Shellpoint charged Yates a $13.00 property inspection fee relating to a visual inspection of the property on July 16, 2018. In a September 17,

2

2018 statement, Shellpoint charged Yates another $13.00 property inspection fee relating to an inspection on August 21, 2018.

On June 22, 2021, Yates filed a class action complaint in the Circuit Court for Prince George's County, Maryland against Shellpoint and Fannie Mae. After Yates amended the Complaint, Shellpoint and Fannie Mae removed the case to this Court. With its Notice of Removal, Shellpoint submitted a declaration specifically representing that based on a review of Shellpoint's electronic database, it had determined that prior to December 31, 2018, Shellpoint had charged inspection fees to over 1,500 borrowers whose loans were serviced by Shellpoint and were still active as of six months before the filing of the lawsuit. After Yates voluntarily dismissed the claims against Fannie Mae, Yates filed the presently operative Second Amended Complaint, in which she alleges in Count 1, on behalf of herself and a class of similarly situated persons, that Shellpoint's practice of charging property inspection fees violated the Maryland Usury Law, specifically, Section 12–121(b). In Count 2, she alleges that by imposing these illegal fees and then seeking to collect payments on the mortgage loan, Shellpoint violated the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14–201 to 14–204, specifically the provisions stating that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist," *id.* § 14–202(8), and that such a debt collector may not "[e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act," Md. Code Ann., Com. Law § 14–202(11), which include the Fair Debt Collection Practices Act's provisions barring the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and the use of "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. §§ 1692e, 1692f (2018). In Count 2, Yates also alleges a violation of

3

the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13–101 to 13–320, which prohibits in "[t]he extension of consumer credit" and "[t]he collection of consumer debts," "any unfair, abusive, or deceptive trade practice," *id.* §§ 13–303(4), (5), which in turn includes (1) any violation of the MCDCA, *id.* § 13–301(14); or (2) any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," or a "[f]ailure to state a material fact if the failure deceives or tends to deceive," *id.* §§ 13–301(1), 13–301(3).

In the Second Amended Complaint, Yates seeks to represent a class, referred to as "the Usury Class," consisting of the following persons who were also allegedly charged illegal property inspection fees by Shellpoint:

> Any person in the State of Maryland for whom (i) Shellpoint has serviced a loan related to a secured, mortgage loan on behalf of Fannie Mae; (ii) where Shellpoint imposed or charged their mortgage loan accounts with property inspection fees; and (iii) the mortgage loan accounts were not satisfied on or before April 5, 2021.

Second Am. Compl. ¶ 44, ECF No. 15. The proposed class excludes any employees or independent contractors of Shellpoint or Fannie Mae, their relatives, employees of the Court, and class members in two other similar civil actions.

## DISCUSSION

Yates has now filed a Motion for Class Certification. In her Motion, Yates seeks certification of the Usury Class and asserts that all of the requirements for a class action set forth in Federal Rule of Civil Procedure 23 have been satisfied, including the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and the Rule 23(b)(3) requirements of predominance and superiority. Fed. R. Civ. P. 23(a), 23(b)(3). Yate also asserts that the class is ascertainable. In its memorandum in opposition to the Motion ("the Opposition"), Shellpoint

4

argues that class certification should be denied on the grounds that: (1) the Usury Class is not ascertainable because to identify class members would require a file-by-file review of Shellpoint's mortgage loan files; (2) the Usury Class does not satisfy the requirements of numerosity, commonality, typicality, and adequacy, in particular because Yates is not an adequate class representative; (3) in light of the individualized issues on whether putative class members actually paid inspection fees, the requirements of predominance and superiority have not be satisfied; and (4) the Usury Class definition is broader than permitted under the applicable state law statute of limitations.

## I.    Legal Standards

A class action allows representative parties to prosecute not only their own claims, but also the claims of other individuals which present similar issues. *Thorn v. Jefferson-Pilot Life Ins. Co,* 445 F.3d 311, 318 (4th Cir. 2006). The use of a class action is primarily justified on the grounds of efficiency because it advances judicial economy to resolve common issues affecting all class members in a single action. *Id.* Because of the need to protect the rights of absent plaintiffs to assert different claims and of defendants to assert facts and defenses specific to individual class members, courts must conduct a "rigorous analysis" of whether a proposed class action meets the requirements of Rule 23 before certifying a class. *See id.* Courts have wide discretion to certify a class based on their familiarity with the issues and potential difficulties arising in class action litigation. *See, e.g. Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010). A plaintiff has the burden to show that all of the necessary prerequisites for a class action have been met. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 458 (4th Cir. 2003).

The first of these prerequisites is that the class must exist and be "readily identifiable" or "ascertainable" by the court through "objective criteria." *EQT Prod. Co v. Adair,* 764 F.3d 347,

358 (4th Cir. 2014). While it is not necessary to identify every class member at the time of certification for a class to be "ascertainable," a class cannot be certified if its membership must be determined through "individualized fact-finding or mini-trials." *Id.* For example, in *EQT*, the court concluded that a proposed class of all individuals who owned an interest in a gas estate was not ascertainable because the actual owners could be determined only through an individualized review of land records, which involved "numerous heirship, intestacy, and title-defect issues [that] plague[d] many of the potential class members' claims to the gas estate." *Id.* at 359–60.

If a class is ascertainable, it must then satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy. To satisfy the numerosity requirement, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the assessment of this element, "numbers alone are not controlling," and a district court should consider "all the circumstances of the case" when deciding if this requirement has been met. *Ballard v. Blue Shield of S.W. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976). The United States Court of Appeals for the Fourth Circuit has stated that 74 members is "well within the range appropriate for class certification," *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), and has upheld the certification of a class with as few as 18 members, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). However, the burden is on the plaintiffs to show that other class members exist and that their joinder is impracticable; a court may not rely on mere speculation that numerosity has been satisfied. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356–57 (3d Cir. 2013); *Poindexter v. Teubert*, 462 F.2d 1096, 1097 (4th Cir. 1972).

Commonality requires that a class have "questions of law or fact common to the class" which are capable of classwide resolution, such that the determination of the truth or falsity of the

6

common issue "will resolve an issue that is central to the validity of each one of the claims in one stroke." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

As for typicality, the named plaintiff must be "typical" of the class, such that that the class representative's claims and defenses are "typical of the claims or defenses of the class" in that prosecution of the claim will "simultaneously tend to advance the interests of the absent class members." Fed. R. Civ. P. 23(a)(3); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006). The plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by" proof of the plaintiff's own individual claim. *Deiter*, 436 F.3d at 466–67. In analyzing this question, a court compares the class representative's claims and defenses to those of the absent class members, considers the facts needed to prove the class representative's claims, and assesses the extent to which those facts would also prove the claims of the absent class members. *Id.* These claims do not have to be factually or legally identical, but the class claims should be fairly encompassed by those of the named plaintiffs. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998).

Finally, the named plaintiff must "fairly and adequately protect the interests of the class" without a conflict of interest with the absent class members. Fed. R. Civ. P. 23(a)(4); *Ward*, 595 F.3d at 179–80. A conflict of interest will not defeat the adequacy requirement when "all class members 'share common objectives[,] the same factual and legal positions, and . . . the same interest in establishing the liability of defendants.'" *Ward*, 595 F.3d at 180 (quoting *Gunnells*, 348 F.3d at 430). Moreover, the conflict must not be "merely speculative or hypothetical." *Id.*

If the named plaintiff satisfies each of these requirements under Rule 23(a), the Court must still find that the proposed class action fits into one of the categories of class action under Rule 23(b) in order to certify the class. Here, Yates relies on Rule 23(b)(3), under which a class action

may be maintained if common questions of law or fact "predominate over any questions affecting only individual members" and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Although similar to Rule 23(a)'s commonality requirement, the test for predominance under Rule 23(b)(3) is "far more demanding" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). The predominance and superiority requirements under Rule 23(b)(3) are designed to ensure that the class action "achieve[s] economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Gunnells*, 348 F.3d at 424 (quoting *Amchem*, 521 U.S. at 615).

Finally, the Court notes that a decision to certify a class is based on whether or not a putative class satisfies the Rule 23 factors, not on a preliminary assessment of the underlying merits of the claim. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

## II.    Ascertainability

In the Motion, Yates asserts that the ascertainability requirement is satisfied because members of the class can be identified from Shellpoint's records that contain sufficient information to ascertain which homeowners whose loans are serviced by Shellpoint were charged an inspection fee, particularly in light of statutory and regulatory requirements relating to recordkeeping. *See, e.g.*, 12 U.S.C. § 2605(k)(1)(E) (2018) (requiring servicers to comply with Consumer Financial Protection Bureau regulations); 12 C.F.R. § 1024.38(c)(2)(i) (requiring servicers to maintain a schedule of all transactions credited or debited to a mortgage loan account); Md. Code Regs.

8

09.03.06.05 (2022) (requiring preservation of mortgage loan records). In contrast, Shellpoint argues that the class is not ascertainable because its electronic records cannot be used to identify all class members, and that instead an individualized review of each borrower's servicing file is necessary to determine which specific borrowers were actually charged inspection fees. In particular, although Shellpoint was operating and maintaining data on inspection fees as early as March 2014, it asserts that because Shellpoint's process for addressing inspection fees was being revamped between May and December 2018, a period of time that falls within the class period, there are some instances in which its electronic records will not show that an inspection fee that was charged to the borrower was actually reversed and then charged to Fannie Mae or other mortgagees, presumably in response to the MCFR investigation. Accordingly, Shellpoint contends that the only way to actually compile a list of class members is to conduct a manual, file-by-file review of all borrower files.

As an initial matter, the Court notes that Shellpoint's argument contradicts the representations it made in its Notice of Removal, including in the accompanying sworn declaration, that it had determined that the class at issue has more than 100 members, as required for this Court to have subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2018), because its review of its electronic database containing "records of all financial activity relating to each borrower's account" had determined that there were 1,583 Maryland borrowers charged a total of 7,476 inspection fees. Shellpoint Decl. ¶¶ 6, 10(a), 10(c), ECF No. 1-4. Shellpoint's present claim that the class is not actually ascertainable from its electronic records raises serious questions about whether Shellpoint acted in good faith in filing its Notice of Removal, in making the present argument, or both, and whether it should now be subject to judicial estoppel precluding the contradictory argument. *See Zinkand v. Brown*, 478 F.3d 634, 638 (4th

9

Cir. 2007) (stating that the determinative factor for judicial estoppel is whether a party "intentionally misled the court to gain unfair advantage" (quoting *Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982))). Where Yates has not raised the question of judicial estoppel, the Court will not address it further.

Nevertheless, even on the merits, Shellpoint's arguments are unpersuasive. The record shows that, at a minimum, the electronic records can be used to come very close to identifying a complete list of those borrowers who not only had a property inspection fee charged to their account, but had the fee designated as one they were required to pay. First, Jonathan McCullough, a senior data analyst for Shellpoint, testified in his deposition that he wrote computer code that allowed him to identify within Shellpoint's electronic records the loans on which inspection fees were charged and the number of times those fees were charged. McCullough further stated that Shellpoint's database uses specific codes to identify property inspection fees and a separate code that identifies whether those or other charges are recoverable from the borrower, and that he could identify "all loans for the second half of 2018 in which an inspection fee was coded as borrower recoverable." Plaintiff's Appendix ("App'x") 376, ECF Nos. 58-3, 58-4, 64-1, 78-1.

Second, to the extent that there were instances when such a fee was reclassified to be one payable by an investor rather than the borrower, the period of time during which the electronic records do not provide a ready basis to identify such loans is limited. Larry Glantz, a Senior Manager at Shellpoint, testified in his deposition that while there was a period starting in May 2018 during which there may have been a need to follow a manual process to identify loans for which a property inspection fee was reclassified as one payable by the investor, as of September 2018, "there was an automated process written to perform those reviews," and as of December 2018, Shellpoint had a specific computer program from which it can be determined specifically

10

whether the inspection fee was recoverable from the borrower, the investor, or someone else. App'x 19. Thus, at worst, there was only a limited period during which it would be difficult to determine whether borrowers specifically charged with paying a property inspection fee benefited from a reclassification of the fee as payable by the investor.

Under these facts, the Court finds that the ascertainability requirement is satisfied. There is no requirement that a class can be deemed ascertainable only if it can be perfectly generated at the touch of a button. "[T]he need to review individual files to identify its members" is not a reason to deny class certification. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 171 (3d Cir. 2015); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539–40 (6th Cir. 2012) (collecting cases); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 144 (D. Md. 2022). Indeed, the ascertainability requirement "does not suggest that *no* level of inquiry as to the identity of class members can ever be undertaken" because "[i]f that were the case, no Rule 23(b)(3) class could ever be certified." *Byrd*, 784 F.3d at 171.

In *EQT Production Company*, the court denied class certification based on a lack of ascertainability, not because some manual review was needed to identify the full range of the class, but because there was not "even a rough estimate of the number of potential successors-in-interest" or "even a rough outline of the class['s] size and composition." *EQT Prod. Co.*, 764 F.3d at 359–60 (finding that identification of the full class would require examination of land records, which is a "complicated and individualized process" and could involve consideration of "numerous heirship, intestacy, and title-defect issues"). Rather, the court recognized that "[t]he plaintiffs need not be able to identify every class member at the time of certification," and that a finding that ascertainability has not been satisfied is warranted when "class members are impossible to identify

11

without extensive and individualized fact-finding or 'mini-trials.'" *Id.* at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

Here, the electronic records can be used to generate a presumptive list of class members— those borrowers not only charged a property inspection fee but also initially designated to pay it— that is far more precise than just a "rough estimate." *Id.* at 359. The additional refinement needed to determine whether the fee was later reclassified relates to a limited time period and would be readily identifiable from specific records for certain accounts. Indeed, other courts have found that ascertainability is satisfied in similar situations where determining members of the class could be accomplished by a review of the defendant's records. *See, e.g.*, *J.O.P. v. U.S. Dep't of Homeland Security*, 338 F.R.D. 33, 52–53 (D. Md. 2020) (rejecting the argument that individual review to determine if someone was a member of the class defeated ascertainability because the information was contained in the defendant's own records); *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196–97 (E.D. Va. 2015) (rejecting the argument that the fact that some manual review of files would be needed to identify class members defeats ascertainability). The Court therefore finds that the class is ascertainable.

## III.  Rule 23(a) Requirements

### A.  Numerosity

Yates argues that numerosity is satisfied because evidence from discovery shows there are hundreds of Maryland borrowers in the putative class. Shellpoint acknowledges that 1,232 borrowers had inspection fees identified on their loans between June and December 2018 but argues that numerosity is not satisfied because, as discussed above, it takes the position that whether the borrowers were actually charged the fees, and whether those fees were not later reclassified as to be paid by investors, cannot be readily ascertained. *See supra* part II. Here,

12

however, where 1,232 borrowers are listed as having been charged such fees at some point, Shellpoint represented to the Court that there are at least 100 class members in order to remove this case to this Court, and the Fourth Circuit has approved classes with as few as 18 members, *Cypress*, 375 F.2d at 653, the Court finds that Yates has satisfied the numerosity requirement of Rule 23(a).

### B.   Commonality

As to commonality, Yates asserts that this requirement is satisfied because there are several questions of law or fact common to the class, including:  (1) whether Shellpoint is permitted to impose property inspection fees on the accounts of Maryland mortgage loan borrowers such as Yates and the putative members of the Usury Class; (2) whether Shellpoint is permitted to collect those property inspection fees from the mortgage loan borrowers; (3) whether such mortgage loan borrowers are entitled to the statutory penalty authorized by Md. Code Ann., Com. Law § 12–114(b)(1)(ii) for each instance that Shellpoint imposed an illegal property inspection fee, or whether they are entitled only to a single statutory penalty payment for multiple violations of Section 12–121(b); (4) whether Shellpoint can be held liable under the MCDCA and MCPA for imposing and collecting, or attempting to collect, property inspection fees from mortgage loan borrowers; and (5) whether Shellpoint's affirmative defenses apply to the claims of mortgage loan borrowers under Section 12–121(b), the MCDCA, and the MCPA.  Shellpoint argues that these common questions cannot be resolved by common answers because there are issues requiring individualized determinations of claims or injuries.  However, the commonality requirement can be met when there is even a single common question of law or fact shared by the named plaintiff and the putative class. *See Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 154 (2d Cir. 1983); *Baby Neal* ex rel. *Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994);

*J.B.* ex rel. *Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999); *Fernandez v. RentGrow, Inc.*, 341 F.R.D. 174, 201 (D. Md. 2022). Where Yates has identified multiple common questions of law or fact which when answered will "resolve an issue that is central to the validity of each one of the claims in one stroke," *Wal-Mart*, 564 U.S. at 350, particularly whether Shellpoint's property inspection fees charged to and collected from members of the putative class violated various Maryland laws, the Court finds that commonality has been satisfied. Because Shellpoint's remaining arguments focus more on the issue of whether individual issues overwhelm common ones, they will be discussed in the Court's consideration of the predominance requirement. *See infra* Section IV.A.

### C.    Typicality

Yates argues that this requirement is met because Shellpoint's business practices relating to the imposition and collection of property inspection fees do not differ among Maryland mortgage loan borrowers, including Yates. Indeed, Yates's claims under the Maryland Usury Law, the MCDCA, and the MCPA are generally the same as those of the class members in that they all center on the claim that Shellpoint violated the law stating that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." Md. Code Ann., Com. Law § 12–121(b).

Shellpoint argues that typicality is not satisfied because even though a property inspection fee was imposed on Yates, she did not end up paying the fee; because she does not have an MCDCA claim under Md. Code Ann., Com. Law § 14–202(11) where no property inspection fee was imposed on her after October 1, 2018, the effective date of that provision; and because she cannot show reliance on misrepresentations as required to support an MCPA claim. The record,

14

however, contains documentation that Yates did pay property inspection fees on June 20, 2018 and August 21, 2018.

Even if these distinctions can be established, the lack of perfect identity of claims does not prevent a finding of typicality. *See Broussard*, 155 F.3d at 344. Where it is the imposition of a property inspection fee that violates Section 12–121(b), whether Yates actually paid the fee is an issue of damages which does not sufficiently distinguish her claim as to prevent a finding of typicality, particularly where a plaintiff may recover a penalty of $500 without demonstrating damages in the form of payment of unauthorized charges. *See* Md. Code Ann., Com. Law § 12–114(b) (providing that the penalty for a violation of Section 12–121 is "[t]he sum of $500" or "[t]hree times the amount of interest and charges collected in excess of the interest and charges authorized by this subtitle"). As for the MCDCA, Yates's claim is primarily based on part on Md. Code Ann., Com. Law § 14–202(8), which provides that "in collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist," a provision that would apply equally to Yates and other class members who were charged a property inspection fee that was not permitted by law. *Id.* Likewise, where Yates's MCPA claim is based in part on the fact that a violation of the MCDCA necessarily constitutes an unfair, abusive, or deceptive trade practice under the MCPA, *see id.* § 13–301(14)(iii), she likewise has an MCPA claim that would apply equally to other class members. Thus, even if Yates lacks the ability to pursue an additional theory of liability under the MCDCA based on the timing of the imposition of the fee and an additional theory of liability under the MCPA based on reliance upon false or misleading statements or omissions made in seeking unlawfully imposed property inspection fees, *see id.* § 13–301(1), (3), advancement of her

15

available claims will "simultaneously tend to advance the interest of the absent class members." Fed. R. Civ. P. 23(a)(3).

Ordinarily, denial of class certification based on a lack of typicality would stem from a variation in claims between the class representative and the putative class members that "strikes at the heart of the respective causes of action[]." *Deiter*, 436 F.3d at 467. In *Deiter*, an antitrust case, the court found that typicality was not established because the class representatives had purchased individual products online or by telephone and had paid fixed prices established in advance by Microsoft, while some members of the putative class, known as Microsoft's Enterprise customers, had purchased numerous software licenses for different products, did not purchase them online or by telephone, paid prices that were heavily discounted, and were able to negotiate their deals in a different competitive context. *Id.* at 467–68. Here, where Yates has alleged that Shellpoint engaged in a widespread policy of imposing property inspection fees on borrowers without the right to do so, and where advancing Yates's claims would thereby "simultaneously tend to advance the interests of the absent class members" who have substantially similar claims under the Maryland Usury Law, the MCDCA, and the MCPA, the Court finds that Yates has satisfied the typicality requirement of Rule 23(a). *See Deiter*, 436 F.3d at 466.

### D.    Adequacy

Finally, on the issue of adequacy of representation, Yates argues that this requirement is met because her attorneys are qualified to litigate this case and she is an adequate class representative.

Generally, under the adequacy requirement, a class representative must "fairly and adequately protect the interests of the class," which is generally demonstrated if the class representative is part of the class and has the same interest and suffers the same injury as the other

16

class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019) (quoting *Ward*, 595 F.3d at 179). Primarily, the adequacy inquiry under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (quoting *Amchem*, 521 U.S. at 625). For the conflict of interest to defeat adequacy, the "conflict must be fundamental." *Id.* Such a conflict does not exist where the class members "share common objectives and the same factual and legal positions" and have "the same interest in establishing the liability" of the defendants. *Id.*

Here, Shellpoint does not contest the assertion that Yates's attorneys can adequately represent the class and does not claim that Yates has a conflict of interest with the other members of the class. Rather, Shellpoint argues only that Yates is an inadequate class representative because her deposition reflected that she was not sufficiently engaged in the case. Specifically, Shellpoint asserts that when questioned, Yates, who is 88 years old, did not remember what this case is about, could not identify her lawyers, could not describe what a class action is, did not recognize her answers to interrogatories, did not remember providing input into the drafting of amended complaints, and did not remember reading various versions of the complaint.

However, a class representative's lack of a full understanding of a case, by itself, does not defeat the adequacy requirement. *See Gunnells*, 348 F.3d at 430. In *Gunnells*, the defendant argued that the plaintiffs were inadequate class representatives "because they purportedly lack[ed] sufficient knowledge" about the case. *Id.* The Fourth Circuit rejected this argument as "particularly meritless" because "[i]t is hornbook law . . . that in a complex lawsuit, . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Id.* at 430; *cf. Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 372–73 (1966) (rejecting an argument that a securities derivative action should be dismissed because the named

plaintiff did not understand what the lawsuit was about, did not know any of the defendants by name, did not know the nature of the alleged misconduct, and could not explain statements she made in the complaint, because to so hold would mean that someone "who is uneducated generally and illiterate in economic matters[] could never under any circumstances be a plaintiff in a derivative suit brought in the federal courts to protect her stock interests").

Here, where Yates is 88 years old and acknowledged that she had some memory issues, and she sat for nearly an entire day for her deposition, the fact that she did not provide ideal responses to certain questions does not disqualify her as a class representative. In fact, despite these challenges, Yates confirmed that she knew several of her lawyers, stated that she had made her payments to Shellpoint, demonstrated some knowledge about the case in that she discussed Shellpoint's property inspections at her property, stated that she was seeking return of the fees charged by Shellpoint, and confirmed that she agreed to represent other people in the case. Where *Gunnells* provides that a class representative need not have extensive knowledge of the case to be an adequate class representative, *Gunnells*, 348 F.3d at 430, and Yates has demonstrated some knowledge of this case and has fulfilled her duties as class representative by sitting for a deposition and participating in the litigation process, the Court finds that the adequacy requirement has been satisfied.

## IV.    Rule 23(b)(3)

To secure class certification, Yates must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court will address these requirements of predominance and superiority separately.

18

### A.     Predominance

Yates argues that predominance is established because the predominant issue in this case is whether Shellpoint "use[d] false or misleading means or otherwise act[ed] illegally, unfairly, or unconscionably by imposing or collecting property inspection fees from [Yates] and the Usury Class members in violation of Maryland law." Mot. Class Cert. at 19, ECF No. 58-1.  In contrast, Shellpoint argues that individual issues will predominate because a file-by-file review will be required to determine whether individual borrowers were actually charged a fee, whether a borrower actually paid the fee, and whether the charge was ultimately reversed.  Shellpoint also argues that the MCDCA and MCPA claims require individualized determinations of whether particular class members relied on false or misleading statements, which would cause such individual issues to predominate over the common issues.

In *Gunnells*, the Fourth Circuit found that the predominance standard under Rule 23(b)(3) was satisfied when "[p]laintiffs requested, and the district court certified, class claims . . . that rested on a single theory:  that [the defendant's] mismanagement of claims contributed to the ultimate collapse of [a healthcare plan] and so caused Plaintiffs' damage." *Gunnells*, 348 F.3d at 428.  The court found that there were issues common to all class members, including whether there was a breach of contract, whether the plaintiffs were third-party beneficiaries of that contract, and whether the defendant otherwise owed a fiduciary duty to the plaintiffs.  *Id.*  The court rejected the claim that individual issues predominated because the court would need to conduct individual determinations of damages for each class member because "Rule 23 explicitly envisions class actions with such individualized damage determinations," and "courts *usually* require individual proof of the amount of damages each member incurred."  *Id.*

19

Here, Yates likewise requests certification of class claims primarily on a single theory: that Shellpoint imposed property inspection fees on mortgage loan borrowers in violation of Maryland law. As discussed above, there are multiple common questions that need to be answered under this theory, including whether Shellpoint is permitted to impose such property inspection fees, whether it may collect those fees, whether class members can collect the statutory penalty for each specific violation, whether the imposition of the unlawful property inspection fees also violates the MCDCA and the MCPA, and whether any of Shellpoint's affirmative defenses apply. Resolution of these common questions will largely resolve the question of liability and establish the framework for damages determinations. At that point, any individualized review of class members' files, all of which would have included some record of the imposition of a property inspection fee, would consist of verification of whether that fee remained in place or was later reclassified and then a determination of whether the fee was ultimately paid, which is akin to the type of individualized damages review that is standard in class actions and does not prevent a finding of predominance. *See Gunnells*, 348 F.3d at 428. Where such determinations, even if requiring review of individual files, would be systematic and focus on the presence or absence of specific codes, and would not require resolution of additional legal questions, the Court finds that common questions predominate such that the requirement of Rule 23(b)(3) has been satisfied.

Shellpoint's assertion that assessment of the MCDCA and MCPA claims will require individualized determinations on the issue of reliance does not alter this conclusion. First, Yates's MCDCA claim is primarily premised on section 14–202(8), which states that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann. Com. Law § 14–202(8). Shellpoint has identified no authority—and the Court is unaware of any—that establishes that a

20

plaintiff must prove reliance to establish an MCDCA claim under this provision. *See Nationstar Mortgage LLC v. Kemp*, 258 A.3d 296, 322 (Md. 2021) (requiring under this provision that a plaintiff allege the defendant had a "claim of a right to assess a property inspection fee," "the illegality of the fee . . . claimed," and the defendant's "knowledge that the right did not exist"). Shellpoint likewise has not demonstrated that reliance is an element of the separate MCDCA provision under section 14–202(11), which provides that any conduct which violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act is a violation of the MCDCA, and even if that were the case, such an individualized analysis would not be necessary to determine liability and the availability of damages under the MCDCA because of the availability of section 14–202(8). *See* Md. Code Ann., Com. Law § 14–203 (stating that "[a] collector who violates any provision of [the MCDCA] is liable for any damages proximately caused by the violation").

Likewise, Yates's MCPA claim does not require proof of reliance because an MCPA violation can be established simply by showing a violation of the MCDCA. *See* Md. Code Ann., Com. Law § 13–303 (prohibiting an "unfair, abusive, or deceptive trade practice"); *id.* § 13–301(14)(iii) (including in the definition of an "unfair abusive, or deceptive trade practice" a violation of the MCDCA). Thus, even if reliance is an element of other provisions of the MCPA, it need not be established in order for Yates to prove a violation of the MCPA, which necessarily follows from proof of an MCDCA violation.

For these reasons, the Court finds that Yates has sufficiently established predominance under Rule 23(b)(3) as needed for class certification.

### B.    Superiority

Yates has also demonstrated that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy in this case. In considering whether or not a

class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy," a court must consider:  (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

As to the interest of class members in controlling their individual suits, the United States Supreme Court has stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  Here, the low dollar value of the property inspection fees charged by Shellpoint do not provide a realistic incentive for individual borrowers to bring their own civil actions and for attorneys to agree to take such cases.  Thus, there likely would be little interest among class members in controlling their own individual cases.  As to the extent and nature of any litigation already commenced concerning the controversy, Yates asserts, and Shellpoint does not dispute, that there is no other pending litigation involving the same defendant, issues, and time period as in this case, and the proposed class definition excludes any overlap with other cases.

As for the desirability of concentrating litigation in this forum, Yates argues, and Shellpoint does not dispute, that such concentration is desirable in that it would prevent hundreds of similar cases litigating the same core legal and factual issues.  Finally, the potential difficulties likely to be encountered in the management of a class action do not favor an alternative to a class action.

22

As discussed above, Shellpoint can narrow down the list of class members based on its electronic records which, at a minimum, can identify any borrowers who were charged a property inspection fee payable by the borrower. *See supra* part II. Any challenges in reviewing individual loan files on the specific questions of whether the fee was later reassigned and whether it was paid would be no worse than in individual cases and would likely be handled more efficiently in a class action because of the potential to develop a systematic, repeatable review process. Accordingly, the Court finds that Yates has demonstrated the superiority of a class action as required by Rule 23(b)(3).

## V.      Statute of Limitations

Finally, Shellpoint asserts in the Opposition that Yates's class definition, which includes borrowers whose "mortgage loan accounts were not satisfied on or before April 5, 2021," is overbroad because it does not account for Maryland's general three-year statute of limitations, Md. Code Ann., Cts. & Jud. Proc., § 5–101 (LexisNexis 2020). Because the original Complaint was filed on June 22, 2021, Shellpoint argues that the class must be limited to those with claims based on property inspection fees that were imposed on or after June 22, 2018. In her reply brief, Yates argues that the statute of limitations set forth in the Maryland Usury Law states that "[a] private action for usury under this subtitle may not be brought more than 6 months after the loan is satisfied." Md. Code Ann., Com. Law § 12–111. Accordingly, Yates argues that borrowers whose loans remained in effect until six months before the filing of the Complaint may bring claims based on property inspection fees imposed during the life of the loan. For its part, Shellpoint characterizes Section 12–111 as a statute of repose, a statute that bars any suit brought after a specified time since a defendant acted, *see Statute of Repose*, Black's Law Dictionary (11th ed. 2019), rather a statute of limitations, which establishes a time limit based on the date the claim

accrued, *see Statute of Limitations*, Black's Law Dictionary (11th ed. 2019). Thus, Shellpoint argues that Section 12–111 imposes an additional requirement on top of the standard three-year statute of limitations in that lenders like Shellpoint may not be sued either more than 6 months after the loan was satisfied or more than three years after the property inspection fee was imposed.

As a preliminary matter, the Court of Appeals of Maryland, now the Maryland Supreme Court, has held that property inspection fees are governed by the Maryland Usury Law, Md. Code Ann., Com. Law §§ 12–101 to 12–127. *See Nationstar*, 258 A.3d at 302–03. As to whether Section 12–111 is a statute of limitations or a statute of repose, the statute includes a heading of "Limitation of actions" and makes no references to a statute of repose. Md. Ann., Com. Law § 12–111. Although the Maryland Supreme Court has not directly addressed the question of whether Section 12–111 is a statute of limitations, it has interpreted Md. Code Ann., Com. Law § 12–1019, which resides in the same title of the Commercial Law Article and contains nearly identical language to Section 12–111, as constituting the statute of limitations for Maryland's Credit Grantor Closed End Credit Law, Md. Code Ann., Com. Law § 12–1001 to 12–1030, and permits actions to be brought up to six months after a loan is satisfied. *See Patton v. Wells Fargo Fin. Md., Inc.*, 85 A.3d 167, 169, 180 (Md. 2014). Another judge in this District has reached the same conclusion. *See White v. Bank of Am., N.A.*, No. CCB-10-1183, 2012 WL 1067657, at *8 (D. Md. Mar. 27, 2012). Notably, Section 12–1019, entitled "Limitation on actions," states that "An action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied." Md. Code Ann., Com. Law § 12–1019. In *Patton*, the court specifically court found that this provision derives from and uses the same language as the statute of limitations for the Maryland Usury Law. *See Patton*, 85 A.3d at 180. Shellpoint has identified no case law—and the Court is unaware of any—stating that Md. Code Ann., Com. Law § 12–111 is a statute of repose to be applied in

addition to the general civil statute of limitations.  Because these two statutes of limitations use the same phrasing, the statute of limitations for the Maryland Credit Grantor Closed End Credit Law was based on the statute of limitations for the Maryland Usury Law, and the statute of limitations for the Maryland Credit Grantor Closed End Credit Law has been interpreted to permit causes of action to be brought up to six months after a loan has been satisfied, the Court finds that Section 12–111 establishes the statute of limitations for claims under the Maryland Usury Law, and the general three-year statute of limitations does not apply to the members of the putative class. Thus, there is no need to alter the class definition based on the applicable statute of limitations.

## CONCLUSION

For the foregoing reasons, Yates' Motion for Class Certification, ECF No. 58, will be GRANTED.  A separate Order shall issue.

Date:   August 8, 2023



THEODORE D. CHUANG
United States District Judge