IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRENE YATES,                          *
                                      *
              Plaintiff,              *
                                      *
       vs.                            *        Civil Action No.  ADC-21-3044
                                      *
NEWREZ LLC d/b/a SHELLPOINT           *
MORTGAGE SERVICING,                   *
                                      *
              Defendant.              *
                                      *
       * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant NewRez LLC d/b/a Shellpoint Mortgage Company Limited Partnership

("Shellpoint") moves this Court for partial summary judgment. ECF No. 104.[1] Plaintiff Irene Yates

("Plaintiff") responded in opposition to Defendant's Motion and also moves the Court for partial

summary judgment. ECF No. 107. After considering all parties' Motions and the responses thereto

(ECF Nos. 104, 107, 112, 123), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md.

2023). For the reasons stated herein, Defendants' Motion is GRANTED in part AND DENIED in

part and Plaintiff's Motion is DENIED.

### Factual Background

Plaintiff purchased her home on July 19, 2004, through a loan with Chevy Chase Bank,

F.S.B. ECF No. 15 at ¶¶ 29–30. On April 2, 2008, Plaintiff refinanced the loan, and it was

---

[1] On November 30, 2023, this case was assigned to United States Magistrate Judge A. David
Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 99. All
parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF Nos. 102, 103.

subsequently acquired by Fannie Mae. *Id.* at ¶ 30. On June 1, 2018, Defendant Shellpoint became the loan's collector on behalf of Fannie Mae. *Id.* at 33.

### Procedural Background

On October 5, 2021, Plaintiff filed a putative class action in the Circuit Court for Prince George's County. No. 1-2. On November 29, 2021, the case was removed to this Court, and Plaintiff filed an Amended Complaint, asserting violations of Maryland's Usury Statute, the Maryland Consumer Debt Collection Act (MCDCA) and the Maryland Consumer Protection Act (MCPA) based on Shellpoint's alleged imposition of unlawful property inspection fees on her mortgage statement. ECF Nos. 1, 5. On August 9, 2023, the Court granted Plaintiff's Motion to Certify the Class of Plaintiffs. On December 8, 2023, Shellpoint filed the present partial Motion for Summary Judgment. ECF No. 104. Plaintiff filed a Response in Opposition and a Cross-Motion for Partial Summary Judgment on January 12, 2024. ECF No. 107. On February 9, 2024, Shellpoint filed its Reply and a Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. ECF No. 112. After an extension of time, Plaintiff filed a Reply on March 11, 2024. ECF No. 123.

### DISCUSSION

### Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See English v. Clarke*, 90 F.4th, 636, 645 (4th Cir. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." (emphasis in original). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted); *see also McMichael v. James Island Charter School*, 840 Fed.Appx. 723, 726 (4th Cir. 2020).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club*, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

Here, both parties moved for partial summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be

3

drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (internal citations and quotation marks omitted). "The court must deny both motions if it finds there is a genuine dispute of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Rashid v. Wash. Metro. Area Transit Auth.*, No. DKC 17-0726, 2018 WL 1425978, at *4 (D.Md. Mar. 22, 2018) (citation omitted).

**Analysis**

In its Motion, Shellpoint seeks judgment as a matter of law on the following counts: (1) the charging of unlawful inspection fees in all claims, except those relating to a $13 fee charged in July 2018; and (2) violations of the MCDCA and the MCPA (both Count II). ECF No. 104-1. Shellpoint also seeks a grant of summary judgment as to Plaintiff's claims for emotional distress damages.

The Fees

Shellpoint first argues that it is entitled to summary judgment on all claims, except those relating to a $13 inspection fee that appeared in a statement dated July 16, 2018, because none of Plaintiff's other alleged "fees" are in fact fees, and they do not give rise to a viable claim. ECF

4

No. 104-1 at 14–19. In her response, Plaintiff argues that in addition to the July 16, 2018 fee, she was also improperly charged a fee of $20.66 on June 20, 2018[2]. ECF No. 107 at 10.

Plaintiff has alleged that fees charged by Shellpoint violate both Maryland's usury statute, the MCDCA, and the MCPA. The usury statute states that "a lender may not impose a lender's inspection fee in connection with a loan secured by real property." Com. Law § 12-121(b). The MCDCA[3] states that, "[i]n collecting or attempting to collect an alleged debt a collector may not…[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Com. Law § 14–202(8). As discussed below, it in uncontested that Plaintiff was charged a $13 fee in violation of the usury statute. However, no reasonable jury could conclude that Plaintiff was improperly charged a fee of $20.66.

The mortgage statement at issue, dated June 22, 2018, includes a column labeled "Transaction Activity (05/19/2018 – 06/21/2018)." ECF No. 104-3 at 146. Four transactions appear in the column, and those transactions are designated as either "charges" or "payments." *Id.* The third transaction in the column, dated June 20, 2018, is labeled as a "Property Inspection Payment" in the amount of $20.66, and is designated as a payment—not a charge. *Id.* Further, as Shellpoint argues, the $20.66 transaction appears to be a payment made on Shellpoint's account by Fannie Mae, the investor on the loan. *See* ECF No. 104-1. This activity appeared on Plaintiff's statement because Shellpoint, like all mortgage servicers, is required by Regulation Z to provide all borrowers with a "list of all transaction activity that occurred since the last statement." *See* 12 C.F.R. § 1026.41(d)(4). Additionally, above the Transaction Activity section is a section entitled "Explanation of Amount Due," which sets forth the amounts that Shellpoint is collecting from the

---

[2] In her Amended Complaint, Plaintiff also complained of other fees imposed on her, but only provides argument regarding the July 2018 fee of $13 and June 2018 fee of $20.66 in her brief.
[3] Plaintiff's MCPA claim is derivative of her MCDCA claim.

borrower. *Id.*; ECF No. 104-1 at 15. In this section, the statement lists amounts from the principal, interest, escrow, regular monthly payment, total fees and charges, and overdue payments. ECF No. 104-1 at 15. The amount next to "total fees and charges" is listed as $0.00. A reasonable jury could not find that Plaintiff was imposed a fee of $20.66 when the "Amount Due" section of her mortgage statement clearly reads that she has been billed zero dollars and zero cents in charges and fees. Because there is no dispute as to any material fact as to whether Shellpoint improperly imposed fees, except for the July 2018 charge of $13, Shellpoint's Motion for Partial Summary Judgment is GRANTED as to all claims, except for those relating to the $13 fee.

### Plaintiff's Cross-Motion for Partial Summary Judgment

Plaintiff has also filed a Cross-Motion claiming that she and the class are entitled to partial summary judgment based on Shellpoint's violations of the usury statute. ECF No. 107 at 11. Since the Court has granted Defendant's partial summary judgment as to all other alleged fees the only consideration remaining is whether the Plaintiff is entitled to summary judgment regarding the July 2018 $13 inspection fee. Plaintiff asserts that there is no dispute as to liability, and that the only disputed material fact which prevents the claim from being fully adjudicated is the number of instances that Shellpoint unlawfully imposed inspection fees on herself and the class. ECF No. 107 at 13. Shellpoint argues that Plaintiff and the class members are not entitled to summary judgment as to liability based on Plaintiff's mere assumption or assertion that inspection fees were imposed on all class members, as individual factual and legal issues exist as to the class members' claims.

The Court agrees with Shellpoint. If this were an individual claim, Plaintiff may very well be entitled to summary judgment, but it is not. Plaintiff has chosen to represent the class in this proceeding. Individual and factual issues exist as to: (1) whether all identified borrowers are

6

actually class members; (2) whether and when an inspection fee was actually imposed on the class members; and (3) whether Shellpoint has defenses as to those class members. Plaintiff has not provided the Court with sufficient evidence as to the class members' individual claims and cannot show an absence of disputed issues of material fact as to those class members' claims. Plaintiff's Motion for Partial Summary Judgment as to her claims arising under the usury statute is DENIED.

### The MCDCA Claim

In Count II of the Amended Complaint, Plaintiff asserts violations of the MCDCA and the MCPA. Shellpoint asserts that it is entitled to summary judgment as to Count II because Plaintiff cannot establish all the elements of an MCPA claim and because Shellpoint did not violate the MCDCA. ECF No. 104-1 at 17. In her Response and Cross-Motion for Summary Judgment, Plaintiff argues that she is entitled to partial summary judgment on her MCDCA and MCPA claims because of Shellpoint's imposition of unlawful property inspection fees.

The MCDCA provides that, "[i]n collecting or attempting to collect an alleged debt a debt collector may not:…[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" Com. Law § 14-202(8). This statute is not one of strict liability, and the debtor must show that the collector has attempted to "enforce a right with actual knowledge or a reckless disregard as to the falsity of the existence of the right." *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013) (quoting *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F.Supp.2d 471, 475 (D.Md. 2004). "[T]o withstand summary judgment and eventually prevail at trial, a plaintiff must produce facts from which the trier of fact reasonably may infer that the defendant acted recklessly in claiming the right." *Chavis v. Blibaum & Assoc., P.A.*, 476 Md. 534, 567 (2021). The MCDCA "does not immunize debt collectors from mistakes of law," but the knowledge

requirement is not satisfied in situations "where the law is unsettled at the time the collector claims a right that later turns out not to exist." *Chavis*, 476 Md. at 566–67.

Here, an issue of material fact exists as to whether Shellpoint acted with knowledge or acted recklessly in claiming a right that it knew did not exist. The applicability of the usury statute to mortgage servicers that do not originate loans was not settled until 2021, when the Supreme Court of Maryland held as a matter of first impression that a mortgage servicer is a "lender" under the usury statute, and therefore, is likewise barred from imposing an inspection fee on a borrower. *Nationstar Mortgage LLC v. Kemp*, 476 Md. 149, 188 (2021). The $13 inspection fee charge that is at issue appeared in Plaintiff's July 2018 statement—three years prior to the decision in *Nationstar*. However, in 2017, the Maryland Department of Labor's Office of Financial Regulation instructed Shellpoint that it could not recover inspection fees from borrowers in Maryland. At that point, Shellpoint put in place processes and procedures to reverse all historical inspection fees, to manually identify and reverse inspection fee charges on an ongoing basis, and to develop an automated system to reclassify inspection fees from borrower-recoverable to investor-recoverable. *See* ECF 104-1. Despite Shellpoint's efforts, Plaintiff's account was nonetheless charged $13 on July 16, 2018. This charge was manually reversed on August 21, 2018, apparently without Plaintiff's knowledge. Given the unsettled nature of the law at the time Plaintiff was charged, and the open question as to whether Shellpoint had sufficiently implemented systems to avoid improperly charging borrowers, a triable issue of fact exists as to whether Shellpoint collected a debt knowing that it lacked the right to do so. Shellpoint's Motion for Partial Summary judgment and Plaintiff's Cross-Motion are DENIED as to Plaintiff's MCDCA claim.

Plaintiff's MCPA Claim

8

As for Plaintiff's MCPA claim, Shellpoint argues that it is entitled to partial summary judgment because Plaintiff cannot establish all of the required elements. ECF 104-1: "The purpose of the MCPA is to 'set certain minimum statewide standards for the protection of consumers across the State ....'" *Assannah-Carroll v. Law Offices of Edward J. Mahrer, P.C.*, 480 Md. 394, 408–09 (2022) (citing CL § 13-102(b)(3)). The statute "prohibits all trade practices that are unfair, abusive, or deceptive in, among other things, the collection of consumer debts." *Id.*; *see* CL §§ 13-301(14)(iii); 13-303(5). Therefore, under §§ 13-301 and 13-303 of the statute, a violation of the MCDCA can form the basis of an MCPA claim. However, there are additional requirements in order to bring the claim, even one that is derivative of an MCDCA claim: "a private party suing under the [MCPA] must establish actual injury or loss" under § 13-408. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007). "[T]he consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the . . . misrepresentation." *Id.* at 142.

Here, Plaintiff has not provided the Court with any evidence that she suffered an identifiable loss. To the contrary, in her deposition, Plaintiff testified that she did not remember seeing the July 2018 $13 inspection fee that forms the basis of her case, and that she never paid the charge:

> Counsel for Shellpoint: Do you remember receiving either in paper or electronic a copy of this statement in July of 2018?
>
> Plaintiff: No, I cannot recall now.
>
> Counsel for Shellpoint: So continuing over under the charge column, what is the amount of the property inspection disbursement charge listed here?
>
> Plaintiff: Thirteen dollars.
>
> Counsel for Shellpoint: And the payment amount?
>
> Plaintiff: Zero.

9

ECF No. 104-3 at 287.

Thus, Plaintiff has not provided the Court with sufficient evidence demonstrating that she can meet the reliance requirement of an MCPA claim. Shellpoint's Motion for Summary Judgment is GRANTED as to Plaintiff's MCPA claim.

In her response and cross-motion for partial summary judgment, Plaintiff argues that there is no dispute of material fact that Shellpoint violated the MCDCA and the MCPA, and that she and the class are entitled to summary judgment as to those claims. ECF No. 107 at 15–19. In support of these claims, Plaintiff provides the Court with little evidence, and relies predominantly on conclusory statements. As for the MCDCA claim, too many factual questions exist concerning the class and the imposition of fees on class members. And, as explained above, insufficient evidence exists that Plaintiff can meet the reliance requirement of the MCPA claim. Plaintiff's motion for summary judgment as to her Count II MCDCA and MCPA claims are DENIED.

Plaintiff's Emotional Distress Claim

Shellpoint next argues that, even if Plaintiff's MCDCA claim stands, Shellpoint is entitled to summary judgment on Plaintiff's claims for emotional distress damages. ECF No. 104-1 at 26–27. Plaintiff does not provide the Court with any counterargument.

The MCDCA provides that "[a] collector who violates any provision of this subtitle is liable for damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." Com. Law § 14–203. Further, under Maryland law, "[p]roximate cause exists where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that one may be regarded by persons of ordinary judgment as the logical and probable cause." *Vito v. Sargis & Jones, Ltd*, 108 Md. App. 408, 428 (Md. Ct. Spec. App. 1996) (internal quotations and

citation omitted). In *Scott v. Montgomery County Board of Educ.*, the Fourth Circuit applied

Maryland law and affirmed the grant of summary judgment to the defendants because the evidence

indicated the defendant's conduct "likely contributed" to the harm suffered, but there was "not

sufficient evidence from which a reasonable jury could conclude that there was 'a complete and

unbroken sequence" between the defendant's alleged failures and the plaintiff's emotional distress.

No. 96-2455, 1997 WL 457521, at *6 (4th Cir. Aug. 12, 1997).

In the present case, Plaintiff testified at deposition that she was not seeking damages for

emotional distress:

> Counsel for Defendant: Your testimony is that $47.00 in property inspection fees
> caused you anxiety, kept you from sleeping and made you feel helpless?
>
> Plaintiff: That's funny. But I don't think so. It doesn't keep me up. They have to
> pay for their inspection fees. Now my eyes are getting bad.
>
> Counsel for Defendant. I'm sorry. Are you talking about just in general or right
> now?
> Plaintiff: Right now.
>
> * * * * *
>
> Counsel for Defendant: I'm just asking whether you are claiming damages for
> emotional distress in your lawsuit?
>
> Plaintiff: No.

ECF No. 104-3 at 179:20–180:7, 181:19–21.

Here, Plaintiff has not provided the Court with any evidence that she suffered emotional

distress because of the allegedly improper inspection fees. To the contrary, Plaintiff's testimony

suggests that she did not feel distressed by the fees, given that she responded to the suggestion that

they caused her anxiety by saying "that's funny." Plaintiff also stated that the fees did not keep her

up at night. Indeed, Plaintiff later testified that she was not even seeking damages for emotional

distress in her lawsuit. Shellpoint's Motion for Summary Judgment is GRANTED as to Plaintiff's claim for emotional distress damages under the MCDCA.

### The Statute of Limitations and Statute of Repose

Shellpoint argues that the class members' usury claims are limited to inspection fees charged between October 5, 2018 and October 5, 2021. In so doing, Shellpoint contends that, earlier in the litigation, this Court incorrectly ruled that the default three-year statute of limitations under the Maryland Code did not apply to members of the putative class. Plaintiff argues that the issue was previously decided correctly because Com. Law § 12-111 provides a separate, applicable statute of limitations, and there is no basis for interpreting the relevant provision as a statute of repose.

As the Maryland Supreme Court has held, "the default statute of limitations for civil actions at law in Maryland, codified at CJ § 5-101, is three years, unless another provision of the Code expressly provides for an alternative limitations period." *Cain v. Midland Funding, LLC*, 475 Md. 4, 37 (2021) (citing *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, 417 Md. 386, 392 (2010); *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 358 Md. 453, 459–61 (2000)). This provision was enacted as a "blanket three year limitation covering all civil causes of action for which no other limitation is specifically provided" to "avoid confusion." *Tipton v. Partner's Mgmt. Co.*, 364 Md. 419, 440, 444 (2020). The usury statute, codified at CL § 12-111(b) states: "A private action for usury under this subtitle may not be brought more than 6 months after the loan is satisfied." Shellpoint argues, and the Court here agrees, that the usury statute's ban on claims brought more than 6 months after a loan's satisfaction is a statute of repose, and not a statute of limitations.

12

Black's Law Dictionary defines a statute of limitations as a "'law that bars claims after a specified period...a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered).'" *Anderson v. U.S.*, 427 Md. 99, 118 (2012) (quoting Black's Law Dictionary 1546 (9th ed. 2009). By contrast, a statute of repose is a "statute barring any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.'" *Id.* These two concepts are chiefly distinguished by their purpose and by what kind of event triggers their imposition:

> The purpose of a statute of repose is to provide an absolute bar to an action or to provide a grant of immunity to a class of potential defendants after a designated time period. Statutes of repose differ from statutes of limitation in that *the trigger for a statute of repose period is unrelated to when the injury or discovery of the injury occurs.* Statutes of repose run from an event that is unrelated to when the injury occurs. Thus, a statute of repose may extinguish a potential plaintiff's right to bring a claim before the cause of action accrues. In common parlance, statutes of limitation and statutes of repose are differentiated consistently and confidently by whether the triggering event is an injury or an unrelated event; the latter applying to a statute of repose.

*Id.* at 118–19 (emphasis added internal citations omitted).

As noted above, § 12-111 provides that private actions under the Usury Statute "may not be brought more than 6 months after the loan is satisfied." Thus, "the triggering event" is satisfaction of the loan, *not* an injury such as the imposition of interest or the charging of unlawful fees. *See Anderson*, 427 Md. at 119 (holding that state statute addressing the time within which a medical malpractice claim must be commenced is a statute of limitations, rather than repose, because its trigger is an injury, "rather than being dependent on some action independent of the

injury."). Because the satisfaction of a loan is not tied in time to an injury or the accrual of a claim, I find that § 12-111 is a statute of repose[4].

Therefore, § 12-111 does not extend or supplant the general Maryland civil statute of limitations. Instead, the two provisions work in tandem to delineate the timeframe within which a claim for usury can be pursued. This is because the goals of these two separate time bars differ. Statutes of limitations "encourage prompt resolution of claims" and "avoid the problems associated with extended delays in bringing a cause of action, including missing witnesses, faded memories, and the loss of evidence." *Anderson*, 427 at 118. Statutes of repose, on the other hand, "shelter legislatively-designated groups from an action after a certain period of time." *Id.* The U.S. Supreme Court has acknowledged this kind of statutory interplay by explaining that "[t]he pairing of a shorter statute of limitations and a longer statute of repose is a common feature of statutory time limits." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 506 (2017); *see also Gabelli v. S.E.C.*, 568 U.S. 442, 453 (2013) ("[S]tatutes applying a discovery rule in the context of Government suits often couple that rule with an absolute provision for repose[.]"). Other states have also found that statutes of repose do not supplant or extend otherwise applicable limitations periods but work with statutes of limitation by providing an *outside limit* on the existence of potential claims. *See JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1237 (Del. Ch. 2019) (holding that the claims "would continue to be governed by a three year statute of limitations, which could be tolled," but then also "subject to an outside limit of six years as a statute of repose"); *Harris v. Kareh*, No. 01-18-00775-CV, 2020 WL 4516878, at *10 (Tex. App. Aug. 6, 2020) ("A statute of repose does not extend an applicable statute of limitations period.").

---

[4] The Court acknowledges the prior ruling. However, that ruling arose in a different pretrial context, not a dispositive motion where the Court has received the benefit of a full briefing on the issue as it has in this motion. Since class certification is an interlocutory ruling, the Court construes the issue as one of reconsideration and rules accordingly.

Here, Maryland's statutory scheme provides that a plaintiff must file any civil claim within three years of the claim's accrual, so a plaintiff wishing to challenge an alleged property inspection fee as unlawful has three years to bring a claim after the fee was charged. However, to the extent that the plaintiff's time to bring suit extends past the life of the loan, either because the fee was charged near the end of the loan or the plaintiff has claimed some reason for tolling her claim, the usury law's statute of repose extinguishes any remaining cause of action six months after the loan's satisfaction.

Plaintiff argues that, while no state court has ever directly addressed § 12-111, the issue of whether the provision is a statute of limitation or statute of repose has been decided by *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83 (2014), which interpreted Com. Law § 12-1019. Section 12-1019 resides in the same title of the Commercial Law Article, contains nearly identical language to § 12-111, and was described by the Maryland Supreme Court as a statute of limitations for Maryland's Credit Grantor Closed End Credit Law, permitting actions to be brought up to six months after a loan is satisfied. *See Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 106 (2014); *see also Yates v. NewRez LLC*, No. TDC-21-3044, 2023 WL 5108803, at *11 (D.Md. Aug. 9, 2023). However, the difference between a statute of limitation and a statute of repose was not at issue in *Patton* and was not addressed by that court.

Further, the *Patton* court's designation of § 12-1019's language as a statute of limitation is far from dispositive, as the distinction between statutes of limitation and statutes of repose has long been "muddied" by judicial and legislative bodies alike. *See Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 142–43 (2d Cir. 2013) ("Although statutes of limitations and statutes of repose are distinct in theory, the courts—including the Supreme Court and this Court—have long used the term "statute of limitations" to refer to statutes of repose[.]"); *see also CTS Corp. v.*

*Waldburger*, 573 U.S. 1, 13 (2014) ("Congress has used the term 'statute of limitations' when enacting statutes of repose.") In fact, even the Supreme Court of Maryland has confessed to making such an error and stated that "this Court's opinions have used interchangeably sometimes the descriptors of 'repose' and 'limitations.'" *Anderson*, 427 Md. at 119–120 (also holding that "[i]f a reliable distinction between statutes of limitation and statutes of repose existed prior to 1994, we muddied the waters in *Hecht v. Resolution Trust Corporation*…There, we stated that "[s]tatutes of limitation are statutes of repose, allowing individuals the ability to plan for the future[.]") (internal citations omitted).

What is most indicative of whether a provision is a statute of limitations, or a statute of repose, is the triggering event. Here, it is clear that the triggering event for the statute of repose, the satisfaction of the loan, is unrelated to the injury—in this case, the imposition of an improper inspection fee—or when the discovery of the injury occurred. Section 12-111 contains a statute of repose which works in tandem with Maryland's default three-year statute of limitations on civil claims.

To un-muddy the waters that even the Courts have admittedly found challenging, the operative issue here is how do the statute of limitations of three years and the statute of repose work together. In accordance with the statute of limitations, the Class is limited to claims for the $13 inspection fee that were imposed between October 5, 2018 and October 5, 2021. Working in tandem the statute of repose bars any potential claims from Plaintiffs, whether an illegally imposed inspection fee or any other cause of action, unless filed within 6 months of the satisfaction of the loan.

16

The Court GRANTS Shellpoint's Motion for Summary Judgment as to all usury claims brought by class members who were charged an inspection fee prior to October 5, 2018 and after October 5, 2021.

In accordance, the MCDCA claims are subject to the Maryland Code's default three-year statute of limitations and are therefore limited to the $13 inspection fees charged between October 5, 2018 and October 5, 2021. *See* ECF No. 107. Shellpoint argues that "[h]ere, Plaintiff's Amended Complaint, filed on October 5, 2021, is the first time in which Plaintiff included class action allegations. Plaintiff does not provide the Court with any counterargument in its Response. *See,* ECF No. 107. The Court GRANTS Shellpoint's Motion for Summary Judgment as to all MCDCA claims brought by class members who were charged the $13 inspection fee except those between October 5, 2018 and October 5, 2021.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion,

Shellpoint's Motion for Partial Summary Judgment (ECF No. 104) is GRANTED as to all alleged fees, except those relating to a $13 property inspection fee imposed between October 5, 2018 and October 5, 2021;

Shellpoint's Motion for Partial Summary Judgment is GRANTED as to Plaintiff's Count II MCPA claim;

Shellpoint's Motion for Partial Summary Judgment is GRANTED as to Plaintiff's claims for emotional distress damages under the MCDCA;

Shellpoint's Motion for Partial Summary Judgment is DENIED as to Plaintiff's MCDCA claim but limited to $13 inspection fees imposed between October 5, 2018 and October 5, 2021;

17

Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 107) is DENIED in its entirety. A separate Order will follow.

Date: _15 May 2024_

_____
A. David Copperthite
United States Magistrate Judge